# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| IN RE: ) | Chapter 11 |
| ) |  |
| UNITED STATES MINERAL PRODUCTS ) | Case No. 01-2471 (JKF) |
| COMPANY d/b/a ISOLATEK ) |  |
| INTERNATIONAL, a Delaware corporation ) |  |
| ) | Dkt. Ref. Nos. 3156 and 3221 |
| Debtor. ) |  |

### *AMENDED* FINAL ORDER
### AUTHORIZING REORGANIZED DEBTOR, DEBTOR AND TRUSTEE TO OBTAIN AN EXIT LOAN FACILITY, ENTER INTO AND ASSUME FINANCING AGREEMENT AND POST-PETITION LOAN DOCUMENTS AND GRANT SENIOR LIENS AND SECURITY INTERESTS

Anthony R. Calascibetta, CPA, CTP, as the Chapter 11 Trustee (the "Trustee") appointed in this case for debtor United States Mineral Products Company d/b/a Isolatek International ("USM" or the "Debtor"), having moved this Court on October 7, 2005 (the "Exit Loan Facility Motion"), pursuant to, inter alia, Sections 105 and 364 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Del. Bank. L.R. 4001-2, for, *inter alia*, the entry of a final order authorizing:

    (a)    the Trustee (on behalf of the Debtor) and the "Reorganized Debtor" (as defined below) to obtain from LaSalle Business Credit, LLC ("LaSalle"), as "Exit Lender" (as defined below), cash advances and other extensions of credit, including a revolving credit facility in an amount of up to $8,000,000 outstanding at any time, and three separate term loans in the original principal amounts of $1,000,000, $1,180,000 and $1,500,000;

    (b)    the Trustee (on behalf of the Debtor) and the "Reorganized Debtor" to grant (and, as applicable, confirm the prior grant of) mortgages, security interests and liens to LaSalle, as "Exit Lender" (including, without limitation, as specifically set forth herein and in the "Post-Petition Loan

Documents" (as defined below), liens pursuant to Sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code);

(c) the modification of the automatic stay and other injunctive provisions as set forth herein.

The Court having reviewed the Exit Loan Facility Motion and all matters brought to the Court's attention at the final hearing on the Exit Loan Facility Motion, which was held on November 14, 2005 (the "Final Hearing"), and after due deliberation and consideration and the Court finding that the relief requested is proper under Sections 105(a), 363, 364 and 1142 of the Bankruptcy Code, the Court makes the following findings of fact and conclusions of law applicable to the financing sought by the Trustee (on behalf of the Debtor) and the Reorganized Debtor from LaSalle (the "Exit Loan Order"):

### THE COURT FINDS AND DETERMINES:[1]

A. On July 23, 2001 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

B. The Court has jurisdiction over the Chapter 11 Case, the parties and the Debtor's property pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D). Venue for this Chapter 11 Case and the Exit Loan Facility Motion are proper under 28 U.S.C. §§ 1408 and 1409.

C. On or about August 8, 2001, the United States Trustee for Region 3 (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors and an Official Committee of Asbestos Bodily Injury and Property Damage Claimants (together, the "Official Committees") (Dkt. Nos. 80-81). By order dated on October 28, 2002, the Court (Newsome, B.J.) ordered the

---

[1] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

appointment of Walter J. Taggart as the Legal Representative of Future Asbestos Claimants (the "Legal Representative") (Dkt. No. 786).

D.    On May 20, 2005, the Trustee (on behalf of the Debtor) filed a motion seeking post-petition financing from LaSalle (the "Post-Petition Financing Motion"), which motion was granted by Order of this Court dated June 27, 2005, pursuant to that certain Final Order authorizing Debtor and Trustee to obtain Post-Petition Financing, enter into Post-Petition Financing Agreement and granting Senior Liens, Security Interests and Superpriority Claims (the "Post-Petition Financing Order"). Pursuant to the Post-Petition Financing Order, LaSalle provided post-petition financing and credit pursuant to the terms of that certain loan and security dated as of July 12, 2005, among the Trustee and the Debtor, as borrower, and LaSalle, as lender (the "Post-Petition Financing Agreement").

E.    On September 20, 2005, there was filed with the Court a Fifth Amended Plan of Reorganization jointly proposed by the Trustee and certain of the Official Committees (the "Plan"), which Plan contemplates and explicitly provides for the existence of an "Exit Loan Facility" to be provided as of the "Effective Date" (as defined in the Plan).

F.    LaSalle has agreed to provide cash advances, extensions of credit and other financial accommodations as "Exit Lender", as defined in the Plan (the "Exit Loan Facility") pursuant to and in accordance with a commitment letter dated May 20, 2005, which commitment letter is attached as Exhibit A to the Post-Petition Financing Motion (the "Commitment Letter").

G.    An initial form of Amended and Restated Loan and Security Agreement (as amended, modified or supplemented from time to time, the "Exit Loan Agreement") was filed with the Court as Exhibit A to the Exit Loan Facility Motion at Dkt. No. 3156. The Exit Loan Agreement, together with other agreements, instruments and documents executed in connection

therewith, including, without limitation, those agreements, instruments and documents previously executed in connection with the Post-Petition Financing Agreement (all of which are fully assumed by and assigned to the Reorganized Debtor as provided for in this Order and the Exit Loan Agreement) are collectively referred to as the "Post-Petition Loan Documents". The indebtedness and obligations of the Debtor and the Reorganized Debtor under the Post-Petition Loan Documents shall be referred to as the "Post-Petition Obligations", which shall include, without limitation, the "Liabilities" as defined in the Exit Loan Agreement. The Trustee (on behalf of the Debtor) and the Reorganized Debtor propose to use the proceeds of advances made by LaSalle under the Exit Loan Agreement to effectuate consummation of the Plan on the Effective Date, pay fees and expenses incurred in connection with the closing of the Exit Loan Agreement and, thereafter, for general working capital purposes of the Reorganized Debtor as further provided in the Exit Loan Agreement.

H.  Despite diligent efforts, the Debtor and the Trustee have been unable to obtain adequate unsecured credit and are unable to obtain financing under Sections 364(c) of the Bankruptcy Code. After considering all alternatives, the Debtor and the Trustee have concluded, after consultation with and input from representatives of the Official Committees and the Legal Representative, in the exercise of their prudent business judgment, that the Exit Loan Facility provided by LaSalle (as set forth in the Post-Petition Loan Documents) represents the best financing available at this time.

I.  Notice of the Final Hearing has been given to: (i) the U.S. Trustee; (ii) counsel for the Official Committees and the Legal Representative; (iii) counsel for LaSalle; (iv) all parties listed on the core group service list established pursuant to the prevailing case management order enforced in the Chapter 11 Case; (v) the United States Attorney for the District of Delaware; (vi)

each creditor or other party-in-interest that has filed with the Court a notice of appearance and request to receive service of pleadings in this Chapter 11 Case; (vii) known holders of liens and security interests in Debtor's personal property and real property assets, including MFS, Inc. (collectively, the "Notice Parties"). Such notice constitutes good and sufficient notice of the Exit Loan Facility Motion and the Final Hearing under the circumstances as required by the Bankruptcy Code in light of the nature of the relief requested in the Exit Loan Facility Motion.

J.   Based upon all of the pleadings filed with the Court, the evidence presented at the Final Hearing and the entire record herein, and it appearing that the relief requested in the Exit Loan Facility Motion is in the best interests of the Debtor, its estate and creditors and the Reorganized Debtor, and is essential for consummation of the Plan and for the continued operations of the Reorganized Debtor's businesses after the Effective Date; and it further appearing that the Debtor and the Trustee are unable to obtain unsecured credit for money borrowed or other secured financing on equal or more favorable terms than those set forth in the Post-Petition Loan Documents; and the Court having reviewed the Exit Loan Facility Motion, considered the arguments of counsel, and otherwise being fully advised and good and sufficient cause appearing therefore,

**IT IS ORDERED, ADJUDGED, FOUND, DECREED, AND, AS APPLICABLE, STIPULATED** that:

1.   <u>Disposition</u>. The Exit Loan Facility Motion, as modified by this Exit Loan Order and the Post-Petition Loan Documents, is granted pursuant to Sections 105(a), 363, 364 and 1142 of the Bankruptcy Code to the extent and subject to the terms set forth herein on a final basis, with the foregoing findings incorporated herein by reference. Any objections to the Exit Loan Facility Motion that have not previously been withdrawn or resolved are overruled, it being

acknowledged that the limited objection filed by the Official Committee of Asbestos Bodily Injury and Property Damage Claimants (the "ACC") was resolved by LaSalle agreeing to modify the Exit Loan Agreement to delete a provision previously contained in paragraph 10 of the Exit Loan Agreement to which the ACC objected, which modification to the Exit Loan Agreement has been approved by the ACC. This Exit Loan Order shall be valid, binding on all parties-in-interest and fully effective immediately upon entry.

   2.   Good Cause. The ability of the Trustee, the Debtor and the Reorganized Debtor, as applicable, to obtain sufficient working capital and liquidity under the Post-Petition Loan Documents is vital to the estate of the Debtor, its creditors and the Reorganized Debtor, so that the Trustee (on behalf of the Debtor) and the Reorganized Debtor can consummate the Plan and, thereafter, the Reorganized Debtor can operate its business in the ordinary course. The preservation of the going concern value of the Debtor's and the Reorganized Debtor's business is critical to any successful reorganization, and the Debtor's estate will be immediately and irreparably harmed if this Exit Loan Order is not entered in light of, among other factors, the inability to consummate the Plan and allow the Debtor to emerge as a Reorganized Debtor absent the "Loans" (as defined in the Exit Loan Agreement) to be made available by LaSalle pursuant to the Exit Loan Agreement. Good cause has, therefore, been shown for the final relief sought in the Exit Loan Facility Motion.

   3.   Good Faith. The Post-Petition Loan Documents and this Exit Loan Order have all been negotiated in good faith and at arm's-length between and among the Trustee (on behalf of the Debtor), representatives of the Official Committees, the Legal Representative and LaSalle. Any Loans and/or other financial accommodations made by LaSalle pursuant to this Exit Loan Order and the Exit Loan Agreement shall be deemed to have been extended by LaSalle in good

faith, as that term is used in Section 364(e) of the Bankruptcy Code, and LaSalle shall be entitled to all protections afforded under that section. The terms of the Exit Loan Facility provided under the Post-Petition Loan Documents are fair and reasonable, reflect the Trustee's (on behalf of the Debtor) exercise of prudent business judgment consistent with his fiduciary duties and are supported by reasonably equivalent value and fair consideration.

4.  Fees and Deposit. All fees previously paid and payable, and costs and/or expenses reimbursed or reimbursable under the Post-Petition Loan Documents, this Exit Loan Order, the Commitment Letter or otherwise by or on behalf of the Trustee, the Debtor or the Reorganized Debtor to LaSalle are approved. The Debtor, the Reorganized Debtor and the Trustee are authorized and directed to pay all such fees, in accordance with the terms of the Post-Petition Loan Documents, the Commitment Letter and this Exit Loan Order, without the necessity of the Debtor, the Reorganized Debtor, the Trustee or LaSalle filing any further application with the Court for approval or payment of such fees or expenses. Upon payment of such fees, they shall be deemed fully earned and non-refundable.

5.  Authority to Execute and Deliver Necessary Documents. The Trustee (on behalf of the Debtor) and the Reorganized Debtor are authorized to enter into, execute and deliver (and, where applicable, authorize the filing or recording of) the Exit Loan Agreement and the other Post-Petition Loan Documents, in each case including any amendments thereto, and including, without limitation, UCC financing statements and mortgages or deeds of trust encumbering all of the Collateral and securing all of the Reorganized Debtor's obligations under the Exit Loan Agreement, including repayment or assumption, as applicable, of all Post-Petition Obligations outstanding under the Post-Petition Financing Agreement. The Reorganized Debtor and the Trustee (on behalf of the Debtor) are further authorized to (a) perform all of their obligations

under the Post-Petition Loan Documents and such other agreements as may be required by the Post-Petition Loan Documents to give effect to the terms of the financing provided for in this Exit Loan Order, (b) perform all acts required under the Post-Petition Loan Documents and this Exit Loan Order including, without limitation, the payment in full of all payment of past, present and future fees, costs and expenses (including, without limitation, reasonable attorneys' fees and legal expenses) paid or incurred by LaSalle (without the necessity of filing any application with or obtaining further order from the Court) pursuant to the Exit Loan Agreement and the other Post-Petition Loan Documents, all of which unpaid fees, commissions, costs and expenses shall be included and constitute part of the principal amount of the Post-Petition Obligations, and (c) to do and perform all other acts, to make, authorize, execute and deliver all other instruments, agreements and documents, which may be reasonably requested by LaSalle. Upon the funding by LaSalle of any Loans under the Exit Loan Agreement (or, if earlier, consummation of the Plan or the occurrence of the Effective Date), all Post-Petition Loan Documents previously executed and delivered pursuant to or in connection with the Post-Petition Financing Agreement shall be assumed in full by the Reorganized Debtor, and constitute obligations which are fully valid and binding upon, and fully enforceable against, the Reorganized Debtor. For purposes of the Plan (but subject to the satisfaction of all conditions precedent set forth in the Exit Loan Agreement), all liens and security interests granted pursuant to or in connection with the Post-Petition Financing Order and the Post-Petition Loan Documents executed prior to the date of this Exit Loan Order shall, pursuant to Section 4.1 of the Plan, be deemed fully assigned by LaSalle, as Post-Petition Lender, to LaSalle, as Exit Lender, and any property constituting collateral vesting in the Reorganized Debtor under the Plan shall vest in the Reorganized Debtor under and subject to the liens and security interests previously granted pursuant to or in connection with the Post-

Petition Financing Order and Post-Petition Loan Documents executed prior to the date of this Exit Loan Order. For purposes of confirming the treatment of the "Post-Petition Financing Claim" (as defined in the Plan) in accordance with the provisions of Section 4.1 of the Plan, LaSalle shall, as soon as reasonably possible after funding occurs under the Exit Loan Agreement, advise the Trustee in writing that (i) the Closing has occurred with respect to the Exit Loan Agreement, (ii) the liens and security interests of LaSalle, as Post-Petition Lender, have been assigned to LaSalle, as Exit Lender as Collateral for the Exit Loan Facility, and (iii) the remaining provisions of Section 4.1 of the Plan have thus become operative.

6. Lien Priority.

(a) Subject only to "Permitted Liens" (and, with respect to property subject to such Permitted Liens, the liens and security interests of LaSalle shall be junior to such Permitted Lien) as defined in the Exit Loan Agreement, LaSalle is further granted (and, with respect to liens and security interests previously granted under the Post-Petition Financing Order, the grant of such liens and security interest is confirmed and shall continue in their entirety) a first priority, duly perfected security interest in, and lien on, under Section 364(c)(2) of the Bankruptcy Code and other applicable law, all of the Trustee's, the Debtor's and the Reorganized Debtor's right, title and interest in and to any and all property or rights to property, whether now owned or hereafter acquired by the Debtor, the Reorganized Debtor or the Trustee and whether such property is personal, real or mixed and including, without limitation, all of the "Collateral", as defined in the Exit Loan Agreement, and which Collateral includes, without limitation and by way of general description:

> A continuing security interest in and lien upon the following property of the Debtor, the Reorganized Debtor and the Trustee, whether now or hereafter owned, existing, acquired or arising (whether acquired prior to or subsequent to the commencement of the Chapter 11 Case or the Effective Date of the Plan) and

wherever now or hereafter located: (i) all accounts (whether or not eligible accounts) and all goods whose sale, lease or other disposition by the Debtor, the Reorganized Debtor or the Trustee have given rise to accounts and have been returned to, or repossessed or stopped in transit by, the Debtor, the Reorganized Debtor or the Trustee; (ii) all chattel paper, instruments, documents and general intangibles (including, without limitation, all patents, patent applications, trademarks, trademark applications, trade names, trade secrets, goodwill, copyrights, copyright applications, registrations, licenses, software, franchises, customer lists, tax refund claims, claims against carriers and shippers, guarantee claims, contract rights, payment intangibles, security interests, security deposits and rights to indemnification); (iii) all inventory (whether or not eligible inventory); (iv) all goods (other than inventory), including, without limitation, equipment, vehicles and fixtures; (v) all investment property; (vi) all real property; (vii) all deposit accounts, bank accounts, deposits and cash; (viii) all letter-of-credit rights; (ix) the commercial tort claims listed on Schedule 5(a) to the Exit Loan Agreement; (x) [intentionally omitted]; (xi) all rights and interests of the Debtor and the Trustee in "property of the estate" (within the meaning of the Bankruptcy Code) to which the Reorganized Debtor succeeds; (xii) any other property of the Debtor, the Reorganized Debtor and the Trustee now or hereafter in the possession, custody or control of LaSalle or any agent or any parent, affiliate or subsidiary of LaSalle or any participant with LaSalle in the Loans, for any purpose (whether for safekeeping, deposit, collection, custody, pledge, transmission or otherwise) and (xiii) all additions and accessions to, substitutions for, and replacements, products and proceeds of the foregoing property, including, without limitation, proceeds of all insurance policies insuring the foregoing property, and all of the Debtor's, the Reorganized Debtor's and the Trustee's books and records relating to any of the foregoing and to the Debtor's, the Reorganized Debtor's and the Trustee's business; provided, however, that LaSalle shall not have a lien upon or security interest in (i) USM Litigations (as defined in the Plan) and the proceeds thereof, (ii) the property or rights (including any income, profits or proceeds derived therefrom) contributed or to be contributed by the Debtor to the Asbestos Trust (as defined in the Plan) pursuant to clauses (b), (c), (e), (f), (g) (but only to the extent (1) of claims by the Debtor for indemnity or contribution against the estate of any other debtor under the Bankruptcy Code relating solely to asbestos liabilities of the Debtor, and (2) rights to receive tax refunds for taxable years prior to the Effective Date) (h), (i), (j) and (k) of Section 1.1.18 of the Plan, and (iii) the Trade Claims Escrow Fund (as defined in the Plan) (the above-referenced security interests and liens are collectively referred to as the "Post-Petition Liens").

(b)     No lien or security interest granted to LaSalle, including the Post-Petition Liens, shall be (i) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under Section 551 of the Bankruptcy Code, or (ii) subordinated to

or made *pari passu* with any other lien or security interest under Section 364 of the Bankruptcy Code or otherwise.

(c) The Post-Petition Liens and other rights and remedies granted to LaSalle shall continue in this and in any successor case or cases under the Bankruptcy Code, and such liens and security interests shall maintain their priority as provided or referred to in this Exit Loan Order until all the Post-Petition Obligations have been indefeasibly satisfied in full, in cash and the commitment is terminated in accordance with the terms of the Exit Loan Agreement.

7. Surcharges. No costs or administrative expenses that have been or may be incurred in this Chapter 11 Case, in any proceedings related hereto or in any superseding chapter 7 cases, and no priority claims are or will be prior to or on a parity with the Post-Petition Obligations. In consideration of the Loans to be provided by LaSalle under the Exit Loan Agreement (some of which Loans shall be used to pay professional and other administrative claims necessary to consummate the Plan), in no event shall any costs or expenses of administration be imposed upon LaSalle or any of the Collateral pursuant to Sections 506(c), 552 or 105(a) of the Bankruptcy Code, or otherwise, without the prior written consent of LaSalle, and no such consent shall be implied from any action, inaction or acquiescence by LaSalle. LaSalle shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

8. Additional Perfection Measures.

(a) The liens, security interests and priority granted to LaSalle with respect to property of the Debtor's and the Reorganized Debtor's estate shall, to the fullest extent permitted under applicable law, be valid, enforceable and perfected by operation of law and without the consent of any other person or entity, and shall not be affected by any existing or subsequent

order of the Court including, without limitation, any order dismissing the Chapter 11 Case or converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, or any order confirming the Plan.

(b)     LaSalle may, in its sole discretion at any time after the date of this Exit Loan Order, file mortgages, financing statements, notices of lien or similar instruments, or to otherwise record or perfect its security interests and liens in the Collateral to the extent it has not previously done so (including, without limitation, the pre-filing of UCC-1 financing statements naming LaSalle as secured party and the Reorganized Debtor as debtor), and no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted under this Exit Loan Order or the Post-Petition Financing Order, as applicable.

9.     Permitted Uses of Loan Proceeds; Application of Collateral Proceeds.

(a)     The Reorganized Debtor is authorized to use proceeds of the Loans in such amounts and only for such purposes as are set forth in the Exit Loan Agreement; provided, however, notwithstanding any provision of the Post-Petition Loan Documents or this Exit Loan Order, the proceeds of the Loans shall not be used for the purpose of (i) commencing or continuing any claims, causes of actions or contested matters against LaSalle, including, without limitation, discovery proceedings subsequent to the commencement of any such claims or causes of action, (ii) preventing, hindering or delaying performance or enforcement by LaSalle of its rights or remedies under this Exit Loan Order or any of the Post-Petition Loan Documents, or (iii) challenging the Post-Petition Liens or other rights or remedies of LaSalle.

(b)     Except as otherwise expressly permitted by the Exit Loan Agreement, the Debtor, the Reorganized Debtor and the Trustee are authorized and directed to remit to LaSalle one-hundred percent (100%) of all collections on, and proceeds of, the Collateral, including all accounts receivable collections, proceeds of sales of inventory, fixed assets and any other assets

(including, without limitation, sales in and outside the ordinary course of business), and all other cash or cash equivalents which shall at any time come into the possession or control of the Debtor, the Reorganized Debtor or the Trustee, or to which the Debtor, the Reorganized Debtor or the Trustee shall become entitled at any time. No third party shall be entitled to use the proceeds of any Collateral in any accounts maintained or controlled by them, except as provided under the Post-Petition Loan Documents and this Exit Loan Order, and any funds currently held or received by any such third party shall be held in trust by such third party for the benefit of LaSalle. Any cash generated from the operations of the business of the Debtor or the Reorganized Debtor but not from borrowings under the Post-Petition Loan Documents shall be treated as LaSalle's cash Collateral, and may only be used in accordance with the Post-Petition Loan Documents.

10. <u>Access to Information and Collateral</u>. Without limiting the rights of access and information afforded LaSalle under the Exit Loan Agreement, the Debtor, the Reorganized Debtor and the Trustee shall permit representatives, consultants, auditors, agents and/or employees of LaSalle to have reasonable access to their facilities, offices, premises and their books and records during normal business hours to appraise and inspect the Collateral, monitor compliance with the Exit Loan Agreement, this Exit Loan Order and evaluate business operations, and the Debtor, the Reorganized Debtor and the Trustee shall, among other things, assist, cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

11. <u>Automatic Stay/Injunctive Relief</u>. The automatic stay provisions of Section 362 of the Bankruptcy Code and any injunctive relief otherwise provided for in the Bankruptcy Code or the Plan are, to the extent applicable, vacated and modified to the extent necessary to permit

LaSalle to exercise any and all rights and remedies available to it pursuant to any one or more of the Post-Petition Loan Documents, subject to the terms and conditions of those Post-Petition Loan Documents.

12. <u>Successors and Assigns</u>. The Post-Petition Loan Documents and the provisions of this Exit Loan Order shall be binding upon LaSalle, the Debtor, the Reorganized Debtor, the Trustee, the Debtor's estate and their respective successors and assigns, and shall inure to the benefit of LaSalle, the Debtor, the Reorganized Debtor, the Trustee, the Debtor's estate and their respective successors and assigns including, without limitation, any trustee, examiner, responsible officer, estate administrator, representative or similar person appointed in a case for the Debtor or the Reorganized Debtor under any chapter of the Bankruptcy Code or in any successor proceeding under the Bankruptcy Code.

13. <u>Binding Nature of Agreements</u>. Each of the Post-Petition Loan Documents to which the Debtor, the Reorganized Debtor and/or the Trustee, as applicable, is and will become a party shall constitute legal, valid and binding obligations of the Debtor, the Reorganized Debtor and the Trustee, enforceable in accordance with their terms. The Post-Petition Loan Documents have been or shall be properly executed and delivered to LaSalle by the Debtor, the Reorganized Debtor and/or the Trustee. The rights, remedies, powers, privileges, liens and priorities of LaSalle provided for in this Exit Loan Order and in any other Post-Petition Loan Document shall not be modified, altered or impaired in any manner by any existing or subsequent order (including any order confirming the Plan) or by the Plan itself, or in any subsequent case under the Bankruptcy Code, unless and until the Post-Petition Obligations have first been indefeasibly paid in full, in cash, all Post-Petition Obligations have been completely satisfied and any commitment to lend under the Exit Loan Agreement is terminated.

14. <u>Subsequent Reversal or Modification</u>. This Exit Loan Order is entered pursuant to Sections 105, 363, 364 and 1142 of the Bankruptcy Code, and grants LaSalle all protections afforded by Sections 364(e) of the Bankruptcy Code. If any or all of the provisions of this Exit Loan Order are subsequently reversed, modified, vacated or stayed, that action shall not affect (a) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtor, the Reorganized Debtor or the Trustee to LaSalle prior to the effective date of such action, (b) the validity and enforceability of any lien or priority authorized or created by this Exit Loan Order or the Post-Petition Financing Order, pursuant to the Post-Petition Loan Documents or pursuant to this Exit Loan Order or the Post-Petition Financing Order, or (c) the validity or enforceability of any action taken pursuant to this Exit Loan Order or the Post-Petition Financing Order. Notwithstanding any such reversal, stay, modification or vacatur, any obligation or liability incurred by the Debtor, the Reorganized Debtor or the Trustee to LaSalle prior to the effective date of such action shall be governed in all respects by the original provisions of this Exit Loan Order or the Post-Petition Financing Order, as applicable, and LaSalle shall be entitled to all the rights, remedies, privileges and benefits granted herein and in the Post-Petition Loan Documents with respect to all such indebtedness, obligation or liability. All Loans under the Post-Petition Loan Documents are made in reliance upon this Exit Loan Order, and, therefore, the indebtedness, obligations and liabilities resulting from such Loans prior to the effective date of any stay, modification or vacation of this Exit Loan Order cannot (i) be subordinated, (ii) lose the priority of the Post-Petition Liens, or (iii) be deprived of the benefit of the status of the Post-Petition Liens granted to LaSalle under this Exit Loan Order or the Post-Petition Financing Order, as applicable, or the Post-Petition Loan Documents, as a result of any subsequent order in the Chapter 11 Case, or any superseding case of the Debtor or the Reorganized Debtor.

15. <u>No Waiver</u>. This Exit Loan Order shall not be construed in any way as a waiver or relinquishment of any rights that LaSalle may have to bring or be heard on any matter brought before this Court.

16. <u>No Further Financing or Use of Cash Collateral</u>. In consideration of the financing made available by LaSalle pursuant to this Exit Loan Order and the Post-Petition Loan Documents, the Debtor, the Reorganized Debtor, the Trustee and any successor trustee shall be deemed to have irrevocably waived any right, without LaSalle's prior written consent, to (a) grant or impose, or request that the Court grant or impose, under Section 364 of the Bankruptcy Code (or otherwise) liens or security interests on the Collateral, whether equal, superior or subordinate to LaSalle's liens and security interests on such Collateral, (b) seek authority to use cash collateral as defined under and pursuant to the provisions of Section 363 of the Bankruptcy Code, or (c) seek any modifications or extensions of this Exit Loan Order.

17. <u>Adequate Notice</u>. The notice given by the Trustee of the Final Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the local rules of this Court. Under the circumstances, no further notice of the request for the relief granted at the Final Hearing is required. The Trustee shall promptly mail copies of this Exit Loan Order to the Notice Parties and anyone else entitled to service under applicable bankruptcy rules

18. <u>Entry of Order</u>. This Exit Loan Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Bankruptcy Rules 4001(a)(3), 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is directed to enter this Exit Loan Order on the Court's docket in this Chapter 11 Case.

19. <u>Supersedes Prior Order</u>. This Exit Loan Order amends and supersedes in every respect that certain Order (FINAL) Authorizing Reorganized Debtor, Debtor and Trustee to

B 406539 v.11

Obtain an Exit Loan Facility, Enter Into and Assume Financing Agreement and Post-Petition Loan Documents and Grant Senior Liens and Security Interests entered November 10, 2005 at Dkt. 3221.

Dated: Wilmington, Delaware
       November 29, 2005

                                      *Judith K. Fitzgerald*
                                      **JUDITH K. FITZGERALD**
                                      UNITED STATES BANKRUPTCY JUDGE

B 406539 v.11