# EXHIBIT A

Case 1:05-mc-00243-SLR   Document 2-2   Filed 12/13/2005   Page 1 of 19

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>UNITED STATES MINERAL PRODUCTS COMPANY, d/b/a ISOLATEK INTERNATIONAL, a Delaware corporation<br><br>Debtor. | Chapter 11<br><br>Case No. 01-2471 (JKF)<br><br>Dkt. Ref. No. 3258 |

**ORDER CONFIRMING THE FIFTH AMENDED PLAN OF REORGANIZATION FOR UNITED STATES MINERAL PRODUCTS COMPANY (AS MODIFIED BY CERTAIN TECHNICAL MODIFICATIONS) JOINTLY PROPOSED BY THE CHAPTER 11 TRUSTEE AND THE OFFICIAL COMMITTEE OF ASBESTOS BODILY INJURY AND PROPERTY DAMAGE CLAIMANTS**

This matter comes before this Court on the joint motion of Anthony R. Calascibetta, CPA, CTP, as Chapter 11 Trustee (the "Chapter 11 Trustee")[1] for United States Mineral Products Company (the "Debtor" or "USM"), and the Official Committee of Asbestos Bodily Injury and Property Damage Claimants (the "ACC") for an order pursuant to Sections 1129, 524(g) and 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "Bankruptcy Code"), confirming the Fifth Amended Plan of Reorganization Jointly Proposed by the Chapter 11 Trustee and the Official Committee of Asbestos Bodily Injury and Property Damage Claimants for United States Mineral Products Company, dated September 20, 2005 ("Fifth Amended Plan"), as modified by certain technical modifications filed on November 10,

---

[1] Capitalized terms used in this Order have the meanings given to such terms in the Plan. Any capitalized term used but not defined herein or in the Plan, but that is defined in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules. Such meanings shall be equally applicable to both the singular and the plural forms of such terms.

1

422365.6

2005 (Dkt. No. 3222) (the "Technical Modifications"). Upon the record of the hearing held in open court on November 14, 2005 ("Confirmation Hearing"), and the plan proponents thereafter having filed a definitive document with this Court incorporating the Technical Modifications into the Fifth Amended Plan, entitled the "Modified Fifth Amended Plan of Reorganization," dated November 15, 2005 (Dkt. No. 3258) (hereinafter referred to as the "Plan"); and the Court having separately entered Findings of Fact and Conclusions of Law dated 11/29, 2005 (Dkt. No. ___) ("Findings and Conclusions"), and therein having determined that the Plan may be, and should be, confirmed; and after due deliberation, and sufficient cause appearing,

IT IS HEREBY

**ORDERED, ADJUDGED AND DECREED, as follows:**

A.  **Jurisdiction and Venue**

1.  The Court has jurisdiction to conduct the Confirmation Hearing and to consider confirmation of the Plan pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a final order with respect thereto, except to the extent of the requirements of Section 524(g) of the Bankruptcy Code for issuance or affirmance of the Permanent Channeling Injunction by further order of the United States District Court for the District of Delaware ("District Court") ("Affirming Order"). With respect to the issuance of the Permanent Channeling Injunction, this Court may hear and report to the District Court pursuant to 28 U.S.C. § 157(c), to the extent necessary, concerning the entry of that relief.

2.  At all relevant times, venue in the District of Delaware was proper pursuant to 28 U.S.C. § 1408 and continues to be proper.

**B.   General Decrees and Implementation**

3.   <u>Approval of Technical Modifications</u>.  The Technical Modifications to the Plan are approved in all respects.

4.   <u>Confirmation of the Plan</u>.  Subject to the terms of this Order, the Plan (as filed with the Court at Docket Entry No. 3258) is confirmed in its entirety, and each and every provision contained therein is approved in its entirety.  The terms of the Plan are incorporated by reference into and are an integral part of this Order.

5.   <u>Inconsistencies Between Plan and Other Documents or Orders</u>.  If there is any direct conflict between the terms of this Order and the Plan or any other agreement, instrument, or document intended to implement the provisions of the Plan, the terms of this Order shall control.  In the event of any inconsistency between the Plan and any other agreement, instrument, or document intended to implement the provisions of the Plan, the provisions of the Plan shall govern unless otherwise expressly provided for in such agreements, instruments or documents.  Notwithstanding the foregoing, the terms and provisions of this Court's separate order approving the Exit Loan Facility shall be controlling with respect to the subject matter of that order and the Exit Loan Facility.

6.   <u>Record Closed</u>.  The record of the Confirmation Hearing is closed.

7.   <u>Conditions to Closing</u>.  Nothing in this Order shall in any way affect the provisions of Section 11.2 of the Plan, which provide that the effective date of the Plan, as used in Section 1129 of the Bankruptcy Code, shall not occur, and that the Plan shall be of no force and effect, until the Effective Date and, more specifically, unless and until the conditions in Section 11.2 of the Plan have been satisfied or waived by the appropriate parties as more fully provided in Section 11.3 of the Plan.

3

422365.6

8.  **Binding Order.**  Subject to the provisions of Section 6.2 of the Plan and Bankruptcy Rules 3020(e) and 3021, and notwithstanding any otherwise applicable law, immediately upon the entry on the docket of this Order, the terms of the Plan and this Order are binding upon the Debtor, any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are impaired under the Plan or whether the holders of such Claims or Interests accepted, rejected or are deemed to have accepted or rejected the Plan), any and all non-debtor parties to executory contracts and unexpired leases with the Debtor and any and all entities who are parties to or are subject to the releases and injunctions described herein and in the Plan.

9.  **Approval of Plan Documents.**  The Plan and all exhibits thereto as they exist of record as of the time of entry of this Order including, without limitation, the Asbestos Trust Documents (collectively the "Plan Documents"), and all terms and conditions thereof, are authorized and approved.

C.  **Certain Matters Relating to Implementation of the Plan**

10.  **Authorization to Execute and Deliver Documents.**  The Chapter 11 Trustee or, after the Effective Date, the Reorganized Debtor, is hereby authorized to execute, deliver, file, or record such contracts, instruments, settlement agreements, releases, indentures, and other agreements or documents and to take or direct such actions as may be necessary or appropriate on behalf of the Debtor or Reorganized Debtor, as the case may be, to effectuate and further evidence the terms and conditions of the Plan and Plan Documents, all of which are consistent with the Plan Documents. The Chapter 11 Trustee or, after the Effective Date, the secretary or any other authorized officer of the Debtor or the Reorganized Debtor is hereby authorized to certify or attest to any of the foregoing actions.

11. <u>Corporate Action by the Debtor and the Reorganized Debtor</u>. All matters provided for under the Plan involving any corporate action to be taken by, or required of, the Debtor or the Reorganized Debtor, shall be deemed to have occurred and be effective as provided in the Plan, and shall be authorized and approved in all respects without any requirement for further action by the stockholders or directors of any such entities. This Order constitutes all authority, if any, required by the General Corporation Law of the State of Delaware, as applicable, and any other applicable business corporation, trust, and other laws with respect to the implementation and consummation of the Plan.

12. <u>Actions in Furtherance of the Plan</u>. The approvals and authorizations specifically set forth in this Order are nonexclusive and are not intended to limit the authority of the Chapter 11 Trustee, the Reorganized Debtor or the Asbestos Trusts (as the case may be) to take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, this Order or the transactions contemplated thereby or hereby. In addition to the authority to execute and deliver, adopt or amend, as the case may be, the contracts, instruments, releases and other agreements specifically granted in this Order, the Chapter 11 Trustee, the Reorganized Debtor and the Asbestos Trusts are authorized and empowered, without further application to or order of the Court to take any and all such actions as may be determined to be necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Order.

D. **Vesting of Property**

13. <u>Vesting of Property.</u> Except as otherwise provided in the Plan or a separate order of the Court approving the Exit Loan Facility, on the Effective Date, the property and assets of the Debtor's estate under Section 541 of the Bankruptcy Code shall vest in the Reorganized

Debtor, free and clear of all Claims and Interests, but subject to the obligations of the Reorganized Debtor set forth in the Plan and in this Order. Except as otherwise provided in the Plan or in this Order, commencing on the Effective Date and subject to the terms of the Plan and this Order, the Reorganized Debtor may then and thereafter deal with its assets and property, and may conduct its business and affairs, without supervision of, or permission from, the Bankruptcy Court or the Office of the United States Trustee, and free of any restrictions imposed on the Debtor by the Bankruptcy Code, Bankruptcy Rules, or by the Court during the Chapter 11 case.

14. Release of Liens. Except as otherwise provided in the Plan, in the MFS Stipulation (defined in Paragraph 40 below) with respect to the alleged secured claim of MFS, Inc. ("MFS"), or in any contract or instrument, release or other agreement or document entered into or delivered in connection with the Plan (including, without limitation, the loan agreement for the Exit Financing Facility), or in the separate order of this Court approving the Exit Financing Facility, on the Effective Date all liens against the property of the Debtor's estate shall be fully released and discharged.

E. No Transfer Taxes

15. Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of any of the securities issued, transferred, or exchanged under, or the transfer of any other assets or property pursuant to, or in connection with, the Plan, or the making or delivery of an instrument of transfer under, or in connection with, the Plan shall not be taxed under any law imposing a stamp tax, transfer tax, or other similar tax.

### F. The Asbestos Trusts

16. <u>Asbestos Trusts Approved as Qualified Settlement Funds</u>. On the Effective Date, each of the Asbestos Trusts provided under the Plan shall be established in accordance with the Plan Documents. Each Asbestos Trust shall be a "qualified settlement fund" within the meaning of regulations issued pursuant to Section 468B of title 26, United States Code ("Internal Revenue Code").

17. <u>Asbestos Trust Assets</u>. On the Effective Date, all right, title and interest in and to the assets of each Asbestos Trust as provided under the Plan shall be transferred to, and vested in, the respective Asbestos Trust free and clear of all Claims, Interests, Encumbrances and other interests of any entity without any further action of any entity. Each Asbestos Trust and its respective Trustees are hereby authorized and empowered to receive such assets.

### G. Appointment of Trustees, TAC Members, Legal Representative, and Directors and Officers of the Reorganized Debtor

18. The appointment of the initial trustees of each Asbestos Trust, the members of the Trust Advisory Committee of each Asbestos Trust, the post-consummation Legal Representative of Future Asbestos Claimants, as provided in or as appointed under the Plan, are approved.

### H. Discharge, Releases and Injunctions (Other than the Permanent Channeling Injunction)

18. Except as otherwise specifically provided by this Order, and except as to any Excluded Persons:[2]

    (a) <u>Discharge</u>. To the extent permitted by law applicable as of the Effective Date to cases under the Bankruptcy Code in the District of Delaware, on and as of the Effective Date the Plan and the distributions and rights that are provided in the Plan shall

---

[2] For purposes of this Order, the definition of "Excluded Persons" is set forth in Appendix 1 below.

constitute and operate as a complete satisfaction, release and, pursuant to Section 1141(d)(1)(A) of the Bankruptcy Code, discharge of: (1) any and all Claims, obligations, rights, suits, causes of action, remedies, liens and liabilities of any nature whatsoever (but not including Demands, which are permanently enjoined and channeled to the Asbestos Trusts pursuant to the Permanent Channeling Injunction) against, and Interests in, the Debtor, the Reorganized Debtor or the Asbestos Trusts or the assets and properties of the Debtor, the Reorganized Debtor or the Asbestos Trusts, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, and (2) all Claims, liabilities and causes of action (but not including Demands, which are permanently enjoined and channeled to the Asbestos Trusts pursuant to the Permanent Channeling Injunction), either directly or derivatively through the Debtor or the Reorganized Debtor, against the Released Parties based on the same subject matter as any Claim or Interest, in each case, regardless of whether a proof of Claim or Interest was filed, whether or not Allowed, and whether or not the holder of such Claim or Interest has voted on the Plan, or based on any act or omission, transaction or other activity or security, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date that was or could have been the subject of any Claim or Interest, in each case, regardless of whether a proof of Claim or Interest was filed, whether or not Allowed and whether or not the holder of such Claim or Interest has voted on the Plan; *provided that* this subparagraph shall not be deemed to impair either the right of any Person or Entity that provided goods or services to the Debtor or its estate in the ordinary course of business between the Petition Date and the Effective Date from seeking or receiving payment of all amounts to which such person may claim to be entitled for such goods or services, or any defenses that the Debtor's estate or the Reorganized Debtor may have with respect to such claims.

(b) <u>Releases by Holders of Claims</u>. Without limiting the generality of the discharge under the Plan, and to the extent permitted by law applicable as of the Effective Date to cases under the Bankruptcy Code in the District of Delaware, on and after the Effective Date each holder of a Claim who has accepted the Plan or who accepts any distributions or rights pursuant to the Plan shall be deemed to have unconditionally, irrevocably and conclusively released the Released Parties to the extent provided in the Plan from any and all Claims, demands, obligations, rights, suits, causes of action, remedies, liens and liabilities whatsoever, foreseen or unforeseen, in law, equity, or otherwise, that such Person or Entity would have been legally entitled to assert (whether individually or collectively), based in whole or in part upon any act, omission, transaction, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to, the Debtor or the Reorganized Debtor, the Chapter 11 Case, or the negotiation, formulation, and preparation of the Plan or any related agreements, instruments or other documents, but excluding any claims based on gross negligence, fraud or willful misconduct. This release shall not impair or adversely affect the rights to the treatment provided in Article VII of the Plan or as otherwise provided in the Plan.

(c) <u>Discharge Injunction</u>. To the extent permitted by law applicable as of the Effective Date to cases under the Bankruptcy Code in the District of Delaware, the satisfactions, releases and discharges set forth in Section 16.1 of the Plan shall operate as

a permanent injunction against any Person or Entity, pursuant to Sections 105(a) and 1141 of the Bankruptcy Code, prohibiting, restraining, staying and enjoining the commencement or continuation of any action, the employment of process or any act to collect, recover from, or offset any Claim (but not including Demands, which are permanently enjoined and channeled to the Asbestos Trusts pursuant to the Permanent Channeling Injunction) against, or Interest in, the Debtor, the Reorganized Debtor, or the Asbestos Trusts and (b) any cause of action, whether known or unknown, against the Released Parties[3] based on such Claim (but not including Demands, which are permanently enjoined and channeled to the Asbestos Trusts pursuant to the Permanent Channeling Injunction) or Interest described in subsection 16.1.1(a) of the Plan.

(d)   General Injunction.  To the extent permitted by law applicable as of the Effective Date to cases under the Bankruptcy Code in the District of Delaware, and except as provided in the Plan or the Confirmation Order, as of the date of this Confirmation Order, but subject to the occurrence of the Effective Date, all Persons and Entities, and any Person or Entity claiming by or through them, that have held, currently hold or may hold a Claim (but not including Demands, which are permanently enjoined and channeled to the Asbestos Trusts pursuant to the Permanent Channeling Injunction), demand, obligation, suit, judgment, debt, right, cause of action or liability of any nature or an Interest or other right of an equity security holder that is discharged, canceled or terminated pursuant to the Plan are permanently, forever and completely prohibited, restrained, stayed and enjoined from taking any action against any of the Released Parties or Protected Parties, whether directly or indirectly, derivatively or otherwise, for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any such discharged Claim, demand, obligation, suit, judgment, damages, debt, right, cause of action or liability, or terminated Interest or right of an equity security holder on account of, or based on the subject matter of any such discharged Claims, demands, obligations, suits, judgments, debts, rights, causes of action or liabilities of any nature or Interests or other rights of an equity security holder.

(e)   Reservations of Rights by the Debtor, the Reorganized Debtor and Others.  Notwithstanding Section 16.1.1 or any other provision of the Plan to the contrary, the satisfactions, discharge, releases and injunctions set forth in Section 16.1 of the Plan, the status as a Released Party, the status as a Protected Party,[4] the provisions of Sections 16.2 and 16.6 of the Plan, and anything contained in Article XVI of the Plan shall not serve to release, modify, adversely affect or enjoin: (1) claims by the Debtor, the Reorganized Debtor and/or the Asbestos Trusts against any insurance carrier or surety that issued, or is alleged to have issued, a policy or policies of insurance to, or on behalf of, the Debtor unless such insurance carrier or surety is specifically named as a beneficiary of or a party to an Insurance Carrier or Surety Settlement Order, if any; (2) claims of the Debtor and the Reorganized Debtor under any insurance policy of coverage owned by or issued for

---

[3]  For purposes of this Order, the definition of "Released Parties" is set forth in Appendix 2 below.

[4]  For purposes of this Order, the definition of "Protected Parties" is set forth in Appendix 3 below.

the benefit of the Debtor with respect to any non-asbestos-claims treated under the Plan, for which all rights and entitlements are specifically reserved and retained by the Debtor and the Reorganized Debtor; (3) claims by the Debtor, the Reorganized Debtor and/or the Asbestos Trusts and/or the holder of an Asbestos-Related Claim against any Excluded Person; and (4) the rights and obligations of the Parties to the Verhalen Settlement Agreement (as defined in the Plan).

(f)  <u>Obligations Under the Plan Not Impaired</u>.  The satisfactions, discharge, releases and injunctions set forth in Section 16.1 of the Plan shall not impair or adversely affect the rights held by any Person or Entity to enforce the Plan and any obligation under the Plan and the contracts, instruments, releases and other agreements or documents delivered thereunder or contemplated thereby, or any obligations owed to the Post-Petition Lender under the Post-Petition Financing Agreement and Post-Petition Financing Order or to the Exit Lender under the Exist Loan Facility.

(g)  <u>Discharge of Asbestos-Related Claims As Against the Debtor and the Reorganized Debtor</u>.  Except as provided in the Plan and the Confirmation Order, the transfer to, vesting in, and assumption by the Asbestos Trust of the Asbestos Trust Contribution as contemplated by the Plan shall, among other things, discharge the Debtor, the Chapter 11 Trustee and the Reorganized Debtor from and in respect of all Asbestos-Related Claims (but not Demands, which are permanently enjoined and channeled to the Asbestos Trusts pursuant to the Permanent Channeling Injunction).

## F.  The Permanent Channeling Injunction

19.  <u>Issuance of Permanent Channeling Injunction</u>.  In connection with the creation of the Asbestos Trusts and to supplement the injunctive relief of a discharge under Section 524 of the Bankruptcy Code, the Permanent Channeling Injunction shall be, and hereby is, issued as of the Effective Date pursuant to Sections 105(a) and 524(g) of the Bankruptcy Code, subject to the entry by the District Court of an Affirming Order for the Permanent Channeling Injunction.

20.  <u>Persons and Entities Benefited by the Permanent Channeling Injunction</u>.  On and after the Effective Date, each and all of the Debtor, the Reorganized Debtor, the Protected Parties,[5] the Released Parties[6] and LaSalle Business Credit LLC, and any other Person or Entity

---

[5]  See definition in Appendix 3 below.

[6]  See definition in Appendix 2 below.

providing the Exit Loan Facility under the Plan (the "Exit Lender"), shall have the benefits and protections of the Permanent Channeling Injunction as set forth more specifically in Paragraphs 21 and 22 below; *provided, however, that* a Person or Entity who is an Excluded Person,[7] or who is otherwise excluded by the Plan from the injunctions, discharges or releases under the Plan, shall not have the benefits of the Permanent Channeling Injunction or any other injunction under the Plan, and shall not be released or deemed to be either a Protected Party or a Released Party.

21.  <u>Sole Recourse for Holders of Asbestos-Related Claims and Demands; Permanent Channeling to Asbestos Trusts</u>.  Subject to Paragraph 23 below, and except with respect to rights against Excluded Persons as provided for in the Plan, on and after the Effective Date the sole recourse of the holder of an Asbestos-Related Claim or Demand on account of such Asbestos-Related Claim or Demand or of a Person or Entity that had or could have asserted an Asbestos-Related Claim or Demand shall be permanently and forever channeled to the respective Asbestos Trust established for the benefit of asbestos personal injury claims or asbestos property damage claims, as the case may be, pursuant to the provisions of the Permanent Channeling Injunction, the Plan, and the Asbestos Trust Documents for such trust.  Such holder shall have no right whatsoever at any time to assert an Asbestos-Related Claim or Demand against the Debtor, the Chapter 11 Trustee, the Reorganized Debtor, any other Protected Party, or any property or interest in property of the Debtor, the Chapter 11 Trustee (in his capacity as such), the Reorganized Debtor, or any other Protected Party.

22.  <u>Acts Enjoined</u>.  Subject to Paragraph 23 below, on and after the Effective Date all current and future holders of Asbestos Related Claims and Demands shall be, and are, permanently and forever, restrained, stayed and enjoined from taking any of the following acts or

---

[7]  See definition in Appendix 1 below.

11

422365.6

actions for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos-Related Claim or Demand other than from the respective Asbestos Trust in accordance with the Asbestos Claims Resolution and Distribution Procedures for such trust:

(a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without express or implied limitation, any prosecution thereof in a judicial, arbitral, administrative, or other forum) against or affecting any Protected Party or any property or interests in property of any Protected Party;

(b) enforcing, levying, attaching (including, without express or implied limitation, any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Protected Party or any property or interests in property of any Protected Party;

(c) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance against any Protected Party or any property or interests in property of any Protected Party;

(d) setting off, seeking reimbursement of, contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interests in property of any Protected Party; and

(e) proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the asbestos trust documents, except in conformity and compliance therewith;

*provided, however,* that the Permanent Channeling Injunction shall not cover or affect any actions or proceedings (x) brought to enforce any right or obligation under the Plan, any Exhibits to the Plan, or any other agreement or instrument between the Debtor or the Reorganized Debtor and the Asbestos Trusts, (y) excluded by the Plan from the injunctions and/or releases set forth in the Plan, or (z) against, involving or related to any Excluded Person. Any Person or Entity who is an Excluded Person is not protected by the Permanent Channeling Injunction.

23. <u>No Release, Discharge, Injunction or Permanent Channeling Injunction in Favor of An Excluded Person</u>. Nothing contained in the Plan or in this Confirmation Order shall (i) act to release or discharge any Claim or Asbestos-Related Claim as against any Excluded Person, or (ii) mandate the inclusion of an Excluded Person as a Protected Party or grant to any Excluded Person the benefits or protections of any discharge, release or injunction in the Plan or the Permanent Channeling Injunction. Any Person or Entity who is an Excluded Person is not protected by the Permanent Channeling Injunction unless and to the extent specifically provided by this Order.

24. <u>Report and Recommendation to the District Court for Entry of an Affirming Order for the Permanent Channeling Injunction</u>. To the extent required, this Court hereby reports to the District Court, and recommends that the District Court enter an order issuing or affirming the Permanent Channeling Injunction.

## G.   **Section 346 Injunction**

25. In accordance with Section 346 of the Bankruptcy Code, for purposes of any state or local law imposing a tax, no income will be realized by the Debtor or Reorganized Debtor by reason of forgiveness or discharge of indebtedness resulting from the consummation of the Plan. As a result, each state or local taxing authority is permanently enjoined and restrained, after the date of entry of this Confirmation Order, from commencing, continuing, or taking any act to impose, collect, or recover in any manner any tax against the Debtor or Reorganized Debtor arising by reason of the forgiveness or discharge of indebtedness under the Plan.

### H. Continuation of Prior Stays and Injunctions; Effectiveness of Injunctions Granted Under this Confirmation Order

26. All of the injunctions and/or automatic stays provided for, in or in connection with the Chapter 11 Case, whether pursuant to Sections 105 and 362 of the Bankruptcy Code, or any other provision of the Bankruptcy Code or other applicable law, in existence immediately prior to the entry of this Confirmation Order shall remain in full force and effect until the injunctions set forth in the Plan become effective. In addition, on and after the Effective Date the Reorganized Debtor may seek such further orders as it may deem necessary or appropriate to preserve the status quo during the time between the date of entry of this Confirmation Order and the Effective Date.

27. Each of the injunctions contained in the Plan and in this Confirmation Order shall become effective on the Effective Date and shall continue in effect at all times thereafter except as otherwise provided by the Plan or by this Confirmation Order.

28. Notwithstanding anything to the contrary contained in the Plan, all actions in the nature of those to be enjoined by the injunctions shall be enjoined during the period between the Date of entry of this Confirmation Order and the Effective Date.

### I. Executory Contracts

29. Except for executory contracts that the Debtor has rejected prior to the Effective Date or designated as being subject to rejection in connection with the Effective Date, as set forth in Section 12.2 of the Plan, and in accordance with Section 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases not previously assumed by the Debtor pursuant to Section 365 of the Bankruptcy Code shall be deemed to have been assumed by the Reorganized Debtor on the Effective Date.

#### J.      Certain Bar Dates

30.     Bar Date for Administrative Expense Claims (Including Fee Claims).  All applications or requests for payment of Administrative Expense Claims (including Fee Claims and Substantial Contribution Claims as defined in the Plan), must be filed with the Bankruptcy Court and served as required by the Plan and any standing orders of the Bankruptcy Court in the Chapter 11 Case no later than forty-five (45) days after the Effective Date, which shall be the Administrative Claims Bar Date.  Notice of the occurrence of the Effective Date shall constitute adequate notice of the Administrative Claims Bar Date.  The Post-Petition Lender is not required to file Administrative Expense Claims or any other claims of any nature with respect to the Post-Petition Loan Facility.

31.     No Bar Date for Holders of Ordinary Course Obligations.  Holders of Administrative Expense Claims based on obligations incurred by the Debtor in the ordinary course of its business shall not be required to file or serve any request for payment of such Claims, and such claims shall be paid in full by the Debtor or performed by the Reorganized Debtor, when due in the ordinary course of business and in accordance with the terms and conditions of the particular contracts or agreements governing such obligations, if any.

32.     Bar Date for Rejection Damage Claims.  If the rejection of an executory contract or unexpired lease pursuant to Section 12.2 of the Plan gives rise to a Claim ("Rejection Damage Claim") by the other party or parties to such contract or lease, such Rejection Damage Claim shall be forever barred and shall not be enforceable against the Debtor or the Reorganized Debtor, its successors or their respective properties unless the holder of such a Claim files a proof of such Rejection Damage Claim with the Bankruptcy Court on or before the earlier of: (a) thirty (30) days after the date of entry of an order of this Court approving such rejection; or (b) if

15

422365.6

such rejection is pursuant to the Plan, thirty (30) days after the Date of entry of this Confirmation Order (the "Rejection Damages Bar Date"). Any Person or Entity that fails to file a proof of a Rejection Damages Claim arising from such rejection by the Rejection Damages Bar Date shall be forever barred from asserting such a Claim against the Chapter 11 Trustee, the Debtor, its Estate, the Reorganized Debtor or the Asbestos Trusts, any of their respective affiliates (excepting Excluded Persons) or the property or interests in property of the Debtor, the Reorganized Debtor and/or the Asbestos Trusts, or any of their respective affiliates (excepting Excluded Persons), and such Claims shall be forever barred against the Chapter 11 Trustee, the Debtor and its estate and the assets and properties of the Debtor, the Reorganized Debtor and the Asbestos Trusts. Notice of entry of this Confirmation Order shall constitute adequate notice of the Rejection Damages Bar Date.

33.  <u>Effect of Failure to Comply With Bar Dates Established by this Order</u>. A person or entity who fails timely to file a claim as required in response to a bar date established by this Order shall be forever barred, enjoined and estopped from filing or asserting any claim against the Chapter 11 Trustee, the Debtor or the Reorganized Debtor, or their respective property, and each of the Chapter 11 Trustee, the Debtor, the Reorganized Debtor and its respective property shall be forever discharged from any and all indebtedness or liability with respect to such claim.

### K.  <u>Retention of Jurisdiction</u>

34.  <u>General Retention of Jurisdiction.</u> Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court shall retain and shall have jurisdiction over all matters arising from, arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction over all matters specified in Article

XVII of the Plan. The jurisdiction retained by this Court does not include any proceeding with respect to the validity, application, construction, modification or enforcement of the Permanent Channeling Injunction and the Affirming Order, for which jurisdiction is retained by the District Court pursuant to Section 17.2 of the Plan.

35. *Retention of Jurisdiction Over Asbestos Trusts as "Qualified Settlement Funds.* For the purposes of Section 468B of the Internal Revenue Code and Treasury Regulation § 1.468B-1, this Court shall retain jurisdiction over each Asbestos Trust, as a "qualified settlement fund," until the earlier of (a) the entry of an order dismissing, or a final decree closing, the Debtor's bankruptcy case; (b) such time as all funds in such trust have been disbursed in accordance with the Plan, this Order, the Asbestos Trust Documents for such trust, or any further order of the Bankruptcy Court; or (c) further order of the Bankruptcy Court. In the event the Bankruptcy Court for any reason declines or fails to take jurisdiction of any matter pertaining or relating to the qualification or operation of the Asbestos Trust as a "qualified settlement fund", or if the Debtor's bankruptcy case is closed, any aggrieved party with respect to such matter may seek relief in a court of competent subject matter jurisdiction within the State of Delaware.

36. The PI Asbestos Trust and the PD Asbestos Trust shall be subject to the continuing jurisdiction of this Court in accordance with the requirements of Section 468B of the Internal Revenue Code and the regulations issued pursuant thereto.

L. **Exculpation**

37. To the extent permitted by law applicable as of the Effective Date to cases under the Bankruptcy Code in the District of Delaware, and except as otherwise provided in the Plan and except as to any Excluded Person, none of the Released Parties shall have or incur any liability to any Entity for any act or omission in connection with or arising out of the

422365.6

formulation, preparation, dissemination, prosecution, confirmation, consummation, discussion, implementation or administration of the Plan, the Disclosure Statement, any contract, release, or other agreement or document created or entered into under the Plan, or any other action taken or omitted to be taken in connection with this Chapter 11 Case or the Plan, to and including the Effective Date, except for gross negligence, fraud or willful misconduct, and in all respects shall be entitled to rely upon the good faith and informed advice of counsel with respect to their duties and responsibilities under the Plan.

38. To the extent permitted by law applicable as of the Effective Date to cases under the Bankruptcy Code in the District of Delaware, and except for gross negligence, fraud or willful misconduct, each Released Party (as defined in Section 1.1.94 (a) through (k) of the Plan, (i) shall not have or incur any liability to any Entity for any act or omission in connection with or arising out of the negotiation of the Plan, or any other prior plan of reorganization (or document, agreement or instrument related thereto) proposed in or in connection with the Chapter 11 Case, the negotiation or implementation of any of the Plan Documents, the negotiation or implementation of the settlement provided in the Verhalen Settlement, the pursuit of confirmation of the Plan, or any other prior plan of reorganization (or document, agreement or instrument related thereto) proposed in the Chapter 11 Case, or the consummation, performance or administration of the Plan; and (ii) in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and the other Plan Documents or any other prior plan of reorganization (or document, agreement or instrument related thereto) proposed in the Chapter 11 Case.

422365.6