### M. Releases

39. To the extent permitted by law applicable to cases under title 11 of the United States Code in the District of Delaware as of the Effective Date, other than rights to the treatment provided in Article VII of the Plan or as otherwise provided herein, on and after the Effective Date, each holder of a Claim (i) who has accepted the Plan, or (ii) who is entitled to receive a distribution of property under the Plan, shall be deemed to have unconditionally released the Released Parties, the Trade Committee, the Legal Representative, the ACC, the Chapter 11 Trustee, and their current and former representatives from any and all claims (as defined in Section 101(5) of the Bankruptcy Code), obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating or pertaining to the Debtor or the Reorganized Debtor, the Chapter 11 Case, or the negotiation, formulation, and preparation of the Plan or any related agreements, instruments, or other documents or any other prior plan of reorganization (or document, agreement or instrument related thereto) proposed in the Chapter 11 Case.

### N. Stipulated Reduction of the Alleged Secured Claim and Lien of MFS, Inc.

40. The stipulation between the Chapter 11 Trustee and MFS, an alleged secured creditor of the Debtor, which was filed under a certificate of counsel dated November 10, 2005 (Dkt. No. 3226) ("MFS Stipulation"), is approved. The Bankruptcy Court retains jurisdiction to determine the underlying disputes relating to the secured claim and lien claimed by MFS and the objections or defenses thereto.

### O. Exemptions from Certain Laws

41. *Exemption from Securities Laws With Respect to Plan Solicitation.* Pursuant to Section 1125(d) of the Bankruptcy Code, the transmittal of the Solicitation Materials, the solicitation of acceptances of the Plan and the issuance and distribution of any securities pursuant to the Plan, and the Chapter 11 Trustee's, ACC's, Debtor's or Reorganized Debtor's participation in such activities, are not and will not be governed by or subject to any otherwise applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan of reorganization or the offer, issuance, sale, or purchase of securities.

42. *Exemption from Securities Laws With Respect to Securities Issued Under the Plan.* Pursuant to Section 1145(a)(1) of the Bankruptcy Code, the offering, issuance and distribution pursuant to the Plan of any distributions that may be deemed to be securities shall be exempt from Section 5 of the Securities Act of 1933, as amended, and from any state or local law requiring registration, notification, qualification or exemption prior to the offering, issuance, distribution, or sale of securities.

43. *Exemptions from Taxation.* Pursuant to Section 1146(c), the issuance, transfer or exchange of any security contemplated by the Plan, or the making or delivery of an instrument of transfer under the Plan, may not be taxed under any law imposing a stamp tax or similar tax.

### P. Miscellaneous

44. *Discharge of Certain Officers of the Estate.* On the Effective Date, but subject to the provisions of Section 17.15 of the Plan, the Trade Committee, the Chapter 11 Trustee, the ACC, and the Legal Representative shall be released and discharged.

422365.6

45. <u>Dismissal of Avoidance Actions</u>. On the Effective Date, all Preference Actions listed in Exhibit 5 to the Plan, and the Fraudulent Conveyance Action (Adv. Proc. No. 03-54570 (Bankr. D. Del.)), are dismissed with prejudice and without costs. This order shall operate as an omnibus order of dismissal with respect to all of the affected adversary proceedings. The Chapter 11 Trustee, the ACC and/or the Legal Representative shall file a notice of dismissal in the docket of each affected adversary proceeding, with specific reference to this paragraph of this Order.

46. <u>Notice of Confirmation Order and Bar Dates</u>. Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), the Chapter 11 Trustee shall be, and hereby is, directed to serve a notice of the entry of this Order, including the bar date for filing Claims based on the rejection of executory contracts or unexpired leases and for compensation and reimbursement of expenses hereunder, on all parties listed on the 2002 Notice List, all persons while filed notices of appearance in the Chapter 11 Case, and all parties to rejected executory contracts or unexpired leases.

47. <u>Notice of Effective Date</u>. The Reorganized Debtor or the Chapter 11 Trustee shall file and serve a notice that the Plan has become effective within ten (10) days after the Effective Date. Service shall be made on all parties listed on the 2002 Notice List, all persons while filed notices of appearance in the Chapter 11 Case, and the Asbestos Trustees and the members of the Trust Advisory Committees for each Asbestos Trust. The Reorganized Debtor or the Chapter 11 Trustee shall cause notice of the Effective Date in to be published not less than once in *USA Today (Domestic Edition)*, within thirty (30) days after the occurrence of the Effective Date. The notices served and published pursuant to this paragraph shall include notice of entry of the Permanent Channeling Injunction.

48. <u>Payment of Statutory Fees, and Filing of Reports</u>. On the Effective Date and thereafter as may be required, the Chapter 11 Trustee or the Reorganized Debtor, as the case may be, shall file all required reports and pay all fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) as and when due and shall continue to pay such fees and make such reports in accordance with applicable law until the Chapter 11 Case is converted, dismissed, closed or finally decreed pursuant to 11 U.S.C. § 350. In addition, the Reorganized Debtor shall file any required post-confirmation reports in accordance with Bankruptcy Rule 2015 and the published guidelines of the United States Trustee.

49. <u>No Effect of Failure to Reference Particular Plan Provisions</u>. The failure to reference or discuss any particular provision of the Plan in this Order shall have no effect on the validity, binding effect, and enforceability of such provision and such provision shall have the same validity, binding effect, and enforceability as every other provision of the Plan.

50. <u>Effect of Reversal or Modification of this Order.</u> Unless this Order is stayed pending appeal, its reversal or modification shall not affect the validity of the Plan, the Plan Documents, or any other agreement, document, instrument, or action authorized by this Order or under the Plan as to the Debtor, Reorganized Debtor, the Asbestos Trusts or any other Entity acting in good faith, whether or not that Entity knows of the appeal. If any or all of the provisions of this Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the obligations incurred or undertaken under or in connection with the Plan prior to the Reorganized Debtors' receipt of written notice of any such order. Notwithstanding any such reversal, modification or vacatur of this Order, any such obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur

shall be governed in all respects by the provisions of this Order and the Plan or any amendments or modifications thereto.

51.    Reopening of Case. Notwithstanding any closing of this Chapter 11 Case, any of the Chapter 11 Trustee, the Reorganized Debtor, the Asbestos Trusts, the TACs, the Legal Representative, the Trade Claims Representative or any other party in interest with standing may move, on notice to those Persons on the master service list, to reopen the Chapter 11 Case for the purpose of seeking relief pursuant to the retained jurisdiction of the Bankruptcy Court provided herein, in the Plan or under applicable law.

52.    Effect of Non-Occurrence of the Effective Date of the Plan. If the Effective Date does not occur pursuant to the terms of the Plan, unless waived by the applicable parties, then: (a) the terms of this Order and all of the Findings and Conclusions shall be vacated and be null and void; (b) and the Debtor and holders of Claims and Interests shall stand in the same position in which such persons would have stood if this Order had not been entered; (c) any settlement or compromise embodied in the Plan, the assumption or rejection of executory contracts or unexpired leases pursuant to the Plan, and any document or agreement executed pursuant to the Plan, shall be null and void. In such event, nothing contained in the Plan or in this Confirmation Order, and no acts taken in preparation for consummation of the Plan, shall or shall be deemed to: (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person or Entity; (b) prejudice in any way the rights of the Debtor or any other Person or Entity in any further proceedings involving the Debtor; (c) constitute an admission of any sort by the Chapter 11 Trustee, the Debtor, the ACC or any other Person or Entity; or (d) be construed as a finding of fact or conclusion of law with respect to any of the foregoing, or with respect to the Plan.

422365.6

53. <u>Environmental Remediation Payment</u>. On the Effective Date, the Chapter 11 Trustee, on account of the Debtor, is authorized to pay or to cause the Debtor to pay the sum of not more than $2,000,000 to a remediation trust fund to be established on the Effective Date pursuant to a remediation agreement between the Debtor, the Reorganized Debtor and the Chapter 11 Trustee, on one hand, and the New Jersey Department of Environmental Protection, on the other hand.

54. <u>Exclusion of Property from Liens and Security Interests for the Exit Loan Facility</u>. The Exit Lender shall not have a lien upon or security interest in (i) USM Litigations (as defined in the Plan) and the proceeds thereof, (ii) the property or rights (including any income, profits or proceeds derived therefrom) contributed or to be contributed by the Debtor to the Asbestos Trust (as defined in the Plan) pursuant to clauses (b), (c), (e), (f), (g), (but only to the extent (1) of claims by the Debtor for indemnity or contribution against the estate of any other debtor under the Bankruptcy Code relating solely to asbestos liabilities of the Debtor, and (2) rights to receive tax refunds for taxable years prior to the Effective Date) (h), (i), (j) and (k) of Section 1.1.18 of the Plan, or (iii) the Trade Claims Escrow Fund (as defined in the Plan).

55. <u>Recordable Order</u>. This Order is declared to be in recordable form, and shall be accepted by any recording officer for filing and recording purposes without further additional orders, certifications or other supporting documents.

56. <u>MFS Objection Overruled</u>. The objection to confirmation filed by MFS is overruled.

**SO ORDERED, ADJUDGED AND DECREED,** at Wilmington, Delaware, on ____29____, 2005.

*[signature]*
JUDITH K. FITZGERALD
United States Bankruptcy Judge

## APPENDIX 1

Definition of "Excluded Persons"

The term "*Excluded Person*" relates to persons who are specifically denied the benefits of the releases, discharges and injunctions provided under the Plan. "Excluded Person" means and refers to any and all of the following (but solely in and to the extent of their respective positions and/or capacities, if any, indicated in the Plan):

(a) McCarter & English LLP, and all attorneys currently or formerly employed by, associated with or members of that law firm, including any predecessor firms in name or interest;

(b) Anderson Kill & Olick P.C., and all attorneys currently or formerly employed by, associated with or members of that law firm, including any predecessor firms in name or interest;

(c) Krovatin & Associates LLC, Theodore Geiser, Esq., and all attorneys currently or formerly partners or members of, employed by or associated with them, including any predecessor law firms in name or interest;

(d) all retained and ordinary course professionals of the Debtor during the Chapter 11 Case, except for Pepper Hamilton, LLP and Salny Redbord and Rinaldi; and

(e) all ordinary course professionals of the Chapter 11 Trustee, in his capacity as such, with respect to the Chapter 11 Case;

*provided*, that to the extent any Excluded Person is not completely or accurately described or referred to, the definition or description shall be deemed to include the correct and complete description and shall be construed as broadly as required; and *provided, further*, that the inclusion of any Persons or Entities as Excluded Persons (or any such Person's or Entity's removal from that status in the event that certain conditions of the Plan are satisfied) shall not operate or be construed in any way to excuse such Persons or Entities from any requirements under the Plan, the Confirmation Order, the Bankruptcy Code, the Bankruptcy Rules or any applicable orders of the Bankruptcy Court with respect to the filing, prosecution and determination of Administrative Expense Claims (including Fee Claims), and shall not impair or prejudice the rights of any parties in interest to object to such Claims.

## APPENDIX 2

Definition of "Released Parties"

The term "*Released Party*" means, except for and to the extent covered as an Excluded Person, each of the following (but solely in and to the extent of their respective positions and or capacities, if any, indicated below)"

(a)  the Debtor, and its current and former officers, directors, shareholders, agents, employees, representatives, former shareholders, and shareholders whose Old Common Stock is extinguished on the Effective Date;

(b)  the Asbestos Claimants Committee and its members, in their capacity as members (and including the members' respective attorneys, if any, acting on their behalf in connection with the conduct of the business of the committee), Tontine Key LLC and its managing member Sylvester F. Miniter, III (solely in his capacity as such), and the Asbestos Claimants Committee's and its members' respective agents, employees, advisors, financial advisors, accountants, attorneys and other professionals;

(c)  the Trade Committee and its members, in their capacity as members (and including the members' respective attorneys, if any, acting on their behalf in connection with the conduct of the business of the committee), and the committee's and its members' respective agents, employees, advisors, financial advisors, accountants, attorneys and other professionals;

(d)  Anthony R. Calascibetta, in his capacity as Chapter 11 Trustee, and his agents, employees, advisors, financial advisors, accountants, attorneys and other professionals;

(e)  Charles D. Santomeno, individually and in his capacity as an officer or director of the Debtor, but only if he becomes employed by the Reorganized Debtor on the Effective Date pursuant to a new employment agreement, and only to the extent that such a release does not impair or adversely affect any claims, rights, causes of actions or defenses held by the Debtor or its bankruptcy estate with respect to the Fraudulent Conveyance Action or any rights to obtain equitable subordination with respect to any Claim or Interest held or asserted by any Person or Entity that is an Insider (or a Related Party of an Insider), a defendant in the Fraudulent Conveyance Action or an Excluded Person, or any affiliate of such Persons or Entities;

(f)  Walter J. Taggart, in his capacity as the Legal Representative, and his agents, employees, advisors, financial advisors, accountants, attorneys and other professionals;

(h)  each of the professionals (other than the retained and ordinary course professionals of the Debtor and the ordinary course professionals of the Chapter 11 Trustee during the Chapter 11 Case) retained pursuant to an Order of the Bankruptcy

Court by any of the Reorganized Debtor, the Asbestos Trusts, the Asbestos Claimants Committee, the Chapter 11 Trustee, the Legal Representative, and the Trade Committee;

(i) Pepper Hamilton LLP, and all attorneys currently or formerly employed by, associated with or members of the law firm, including any predecessor firms in name or interest;

(j) Salny Redbord and Rinaldi, and all attorneys currently or formerly employed by, associated with or members of the law firm, including any predecessor firms in name or interest;

(k) the QSF Co-Administrators, in their capacities as such (subject, however, to the acceptance of their accounting and delivery of the QSF Funds as required by the Plan);

(l) James P. Verhalen, Sr., individually and in his capacities as Chairman of the Board, an officer and/or director of the Debtor, and as Trustee of the ESOP (*provided, however*, that James P. Verhalen, Sr., shall not be an Excluded Party to the extent of his capacity as a QSF Co-Administrator);

(m) Glenn Redbord;

(n) Jane Cee Redbord;

(o) the ESOP, (excluding any participants therein other than James P. Verhalen, Sr.);

(p) the Cafco Europe Companies;

(q) CIL Group, Ltd., and all direct and indirect subsidiaries thereof;

(r) Cafco Europe Group, S.A.;

(s) Cafco UK, Ltd.;

(t) J.P. Verhalen, L.L.C. and/or James P. Verhalen LLC;

(u) Verhalen Family Holdings, LLC;

(v) Carl Turner;

(w) Francis P. Pandolfi;

(x) Florence W. Verhalen;

(y) all shareholders, interest holders and holders of any equity interests in Verhalen Family Holdings, L.L.C., J.P. Verhalen, L.L.C., and/or James P. Verhalen LLC,

in their capacities as shareholders, interest holders and/or holders of any such equity interests; and

(z)  all persons who served as directors and/or officers of Dalen Corporation at any time prior to December 28, 1998, in their capacities as directors and officers of such entity;

*provided, however,* that notwithstanding this or any Provision of the Plan to the contrary, a Person's or an Entity's status as a "Released Party" status shall not act as a release and shall not preclude an Asbestos Trust (or, if applicable, the Reorganized Debtor) from (X) asserting, pursuing or prosecuting any claims or Causes of Action that are excepted from release and discharge pursuant to any provision of Article XVI of the Plan; and/or (Y) pursuing claims or Causes of Action against any insurance carrier or surety that issued, or is alleged to have issued, a policy or policies of insurance to, on behalf of, or for the benefit of, USM or against which the Debtor or the Asbestos Trusts may assert, directly or indirectly, any claim or Causes of Action, unless such insurance carrier or surety is specifically named as a beneficiary of an Insurance Carrier or Surety Settlement Order; provided, however, that no Person or Entity shall be released or be deemed a Released Party (1) who is an Excluded Person, or (2) if such Person or Entity otherwise excluded from any of the injunctions, discharges or releases set forth in the Plan; and

*provided, further,* that the inclusion of any Persons or Entities as Released Parties shall not operate or be construed in any way to excuse such Persons or Entities from any requirements under the Plan, the Confirmation Order, the Bankruptcy Code, the Bankruptcy Rules or any applicable orders of the Bankruptcy Court with respect to the filing, prosecution and determination of Administrative Expense Claims (including Fee Claims), and shall not impair or prejudice the rights of any parties in interest to object to such Claims.

## APPENDIX 3

Definition of "Protected Parties"

The term *"Protected Party"* means any of the following Persons or Entities (but solely in and to the extent of their respective positions and/or capacities, if any, indicated below), but does not include any Person or Entity that is an Excluded Person under the Plan or any Person or Entity that is not directly, indirectly or derivatively liable for the Debtor's use, sale and/or distribution of asbestos or asbestos containing products:

(a) the Debtor and the Reorganized Debtor;

(b) any officers, directors, stockholders, agents, employees, members, representatives, advisors, financial advisors, accountants, attorneys and other professionals of the Reorganized Debtor after the Effective Date;

(c) the Asbestos Trusts, and their respective Trustees, officers, directors, agents, employees, representatives, advisors, financial advisors, accountants, attorneys, other professionals, and the Trust Advisory Committees, and their respective agents, employees, representatives, advisors, financial advisors, accountants, attorneys and other professionals;

(d) Anthony R. Calascibetta, in his capacity as the Chapter 11 Trustee, and Walter J. Taggart, in his capacity as the Legal Representative, and their respective agents, employees, representatives, advisors, financial advisors, accountants, attorneys and other professionals;

(e) the Asbestos Claimants Committee and its members, in their capacity as members (and including the members' respective attorneys, if any, acting on their behalf in connection with the conduct of the business of the committee), Tontine Key LLC and its managing member Sylvester F. Miniter, III (solely in his capacity as such), and the Asbestos Claimants Committee's and its members' respective agents, employees, advisors, financial advisors, accountants, attorneys and other professionals;

(f) the Trade Committee and its members, in their capacity as members (and including the members' respective attorneys, if any, acting on their behalf in connection with the conduct of the business of the committee), and the committee's and its members' respective agents, employees, advisors, financial advisors, accountants, attorneys and other professionals;

(g) the QSF Co-Administrators (but solely in their capacities as such), subject to (and only upon): (1) acceptance by the Trustees of the Asbestos Trusts of an accounting for all monies and property in the QSF Fund, and (2) delivery of all monies and property in the QSF Fund as part of the Asbestos Trust Contribution, as required under Section 8.3.1 of the Plan;

(h)  any Person or Entity that, pursuant to the Plan or after the Effective Date, becomes a direct or indirect transferee of, or successor to, any assets of the Debtor, the Reorganized Debtor, or the Asbestos Trust (but only to the extent that liability is asserted to exist by reason of becoming such a transferee or successor);

(i)  any Person or Entity that, pursuant to or in connection with the Plan and/or confirmation of the Plan, or after the Effective Date, makes a loan to the Reorganized Debtor or an Asbestos Trust or to a successor to, or transferee of, any assets of the Debtor, the Reorganized Debtor, or an Asbestos Trust (but only to the extent that liability is asserted to exist by reason of such Entity being or becoming such a lender or to the extent any pledge of assets made in connection with such a loan is sought to be upset or impaired), including the Post-Petition Lender and the Exit Lender;;

(j)  the post-consummation Legal Representative of Future Asbestos Personal Injury Claimants appointed under Section 8.10 of the Plan, and his/her agents, employees, advisors, financial advisors, accountants, attorneys and other professionals;

(k)  any Person or Entity to the extent he, she, or it is alleged to be directly or indirectly liable for the conduct of, Claims against, or Demands on the Debtor, the Reorganized Debtor, or an Asbestos Trust on account of Asbestos-Related Claims channeled to such Trust, by reason of one or more of the following:

(1)  such Person's or Entity's ownership of a financial interest in the Debtor or the Reorganized Debtor, or predecessor in interest of the Debtor or the Reorganized Debtor;

(2)  such Person's or Entity's involvement in the management of the Debtor or the Reorganized Debtor or any predecessor in interest of the Debtor or the Reorganized Debtor;

(3)  such Person's or Entity's service as an officer, director, or employee of the Debtor, the Reorganized Debtor, or an affiliate thereof (as such term is defined in Section 101 of the Bankruptcy Code) or their related parties;

(4)  such Person's or Entity's provision of insurance to the Debtor, the Reorganized Debtor or their related parties with respect to Asbestos-Related Claims; provided, however, that in the event such entity denies coverage or alleges that any provision of the Plan voids or makes voidable such coverage, then as to such entity, the Permanent Channeling Injunction shall not apply and such Person or Entity shall not be a "Protected Party" unless and until it is the specifically named beneficiary of an Insurance Carrier or Surety Settlement Order, if any; or

(5)  such Person's or Entity's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of the Debtor, the Reorganized Debtor, or any of the related parties, including, but not limited to:

422365.6

        (i)    involvement in providing financing (debt or equity), or advice to a Person or an Entity involved in such transaction; or

        (ii)    acquisition or sale of a financial interest in a Person or an Entity as part of such transaction;

    (l)    James P. Verhalen, Sr., individually and in his capacities as Chairman of the Board, an officer and/or director of the Debtor, and as Trustee of the ESOP (*provided, however*, that James P. Verhalen, Sr., shall not be an Excluded Party to the extent of his capacity as a QSF Co-Administrator);

    (m)    Glenn Redbord;

    (n)    Jane Cee Redbord;

    (o)    the ESOP, (excluding any participants therein other than James P. Verhalen, Sr.);

    (p)    the Cafco Europe Companies;

    (q)    CIL Group, Ltd., and all direct and indirect subsidiaries thereof;

    (r)    Cafco Europe Group, S.A.;

    (s)    Cafco UK, Ltd.;

    (t)    J.P. Verhalen, L.L.C. and/or James P. Verhalen LLC;

    (u)    Verhalen Family Holdings, LLC;

    (v)    Carl Turner;

    (w)    Francis P. Pandolfi;

    (x)    Florence W. Verhalen;

    (y)    all shareholders, interest holders and holders of any equity interests in Verhalen Family Holdings, L.L.C., J.P. Verhalen, L.L.C., and/or James P. Verhalen LLC, in their capacities as shareholders, interest holders and/or holders of any such equity interests; and

    (z)    all persons who served as directors and/or officers of Dalen Corporation at any time prior to December 28, 1998, in their capacities as directors and officers of such entity.

*provided, however*, that notwithstanding this or any other provision of the Plan, a Person's or an Entity's status as a "Protected Party" shall not preclude or act as a bar, waiver, release or other

legal or equitable defense to (X) the Debtor, the Chapter 11 Trustee, the Reorganized Debtor or the Asbestos Trusts from pursuing any claims or Causes of Action against (1) any insurance carrier or surety that issued, or is alleged to have issued, a policy or policies of insurance to, or on behalf of, or for the benefit of the Reorganized Debtor, its directors, officers and/or employees, or against which the Chapter 11 Trustee or the bankruptcy estate of the Debtor may assert, directly or indirectly, any claims or Causes of Action, and/or (2) any Excluded Person; and (Y) pursuit of any Claims or Causes of Action excluded from any release, discharge or coverage as provided in the Permanent Channeling Injunction or by any other provision of the Plan.