# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>UNITED STATES MINERAL PRODUCTS COMPANY, d/b/a ISOLATEK INTERNATIONAL, a Delaware corporation<br><br>Debtor. | Chapter 11<br><br>Case No. 01-2471 (JKF) |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING CONFIRMATION OF THE FIFTH AMENDED PLAN OF REORGANIZATION FOR UNITED STATES MINERAL PRODUCTS COMPANY JOINTLY PROPOSED BY THE CHAPTER 11 TRUSTEE AND THE OFFICIAL COMMITTEE OF ASBESTOS BODILY INJURY AND PROPERTY DAMAGE CLAIMANTS**

This matter comes before the Court upon the joint request of Anthony R. Calascibetta, CPA, CTP, as Chapter 11 Trustee (the "Chapter 11 Trustee") for United States Mineral Products Company (the "Debtor" or "USM"), and the Official Committee of Asbestos Bodily Injury and Property Damage Claimants ("ACC") for an order pursuant to Sections 1129, 524(g) and 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "Bankruptcy Code"),[1] confirming the Fifth Amended Plan of Reorganization for the Debtor Jointly Proposed by the Chapter 11 Trustee and the Official Committee of Asbestos Bodily Injury and Property Damage Claimants, dated September 20, 2005 (Dkt. No. 3123) ("Fifth Amended Plan"), as amended by certain technical modifications to the Plan filed on November 10, 2005 ("Technical

---

[1]    References to the "Bankruptcy Code" are to the statute as it existed immediately prior to October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 State. 23 (2005) ("BAPCPA"). The amendments to the Bankruptcy Code made by BAPCPA do not apply to the Debtor's case, which was filed in July 2001. *See* Pub. L. No. 109-8, § 1501.

Modifications") (Dkt. No. 3222). The matter came on for a hearing in open court before the undersigned Bankruptcy Judge on November 14, 2005 ("Confirmation Hearing").[2]

The plan proponents advised the Court at the Confirmation Hearing that, prior to the Court's entry of the Confirmation Order, they would file a "Modified Fifth Amended Plan" to incorporate the Technical Modifications and to serve as the definitive plan for confirmation purposes. The plan proponents thereafter filed the definitive "Modified Fifth Amended Plan," dated November 15, 2005 (Dkt. No. 3258); that document is hereafter referred to as the "Plan."

With the exception of the MFS Objection described below, no objections to confirmation were filed, and no person appeared at the Confirmation Hearing to argue or make any presentation in opposition to confirmation of the Plan.

The Court received in evidence, and considered, the following exhibits introduced by the plan proponents at the Confirmation Hearing: (1) the Fifth Amended Plan, dated September 20, 2005 (filed with the Court at Dkt. No. 3123) and the related disclosure statement, also dated September 20, 2005 (Dkt. No. 3124) ("Disclosure Statement"), including all exhibits to the Fifth Amended Plan and appendices to the Disclosure Statement; (2) the Technical Modifications; (3) the affidavit of Laura Campbell, an authorized representative of Bankruptcy Services, LLC, the balloting agent for solicitation of acceptances on the Plan ("BSI" or "Balloting Agent"), sworn to November 2, 2005 (Dkt. No. 3220), with respect to the Balloting Agent's receipt and tabulation of votes on the Plan ("Ballot Report"); (4) the prior affidavit of Kathy Gerber, an authorized representative of BSI, sworn to October 3, 2005 (Dkt. No. 3147) ("Gerber Affidavit"), with respect to service of the notice of the Confirmation Hearing ("Confirmation Hearing Notice")

---

[2]    Unless otherwise defined in this Order, capitalized terms have the meanings given in the Plan.

and service of the plan solicitation materials to parties entitled to receive them in this case; (5) the affidavit of Eric Morgan, dated October 12, 2005 (Dkt. No. 3163), with respect to publication of the Confirmation Hearing Notice in *USA Today (Domestic Edition)*; (6) the certification of Angela Peters, dated October 12, 2005 (Dkt. No. 3176), with respect to publication of the Confirmation Hearing Notice in *Mealey's Litigation Report: Asbestos Bankruptcy*; (7) a stipulation between the Chapter 11 Trustee and MFS, Inc. ("MFS"), filed under a certificate of counsel dated November 10, 2005 (Dkt. No. 3226), with respect to the alleged secured claim of MFS ("MFS Stipulation"); (8) the order of the Bankruptcy Court (Fitzgerald, B.J.), dated September 7, 2005 (Dkt. No. 3050), which approved the Verhalen Settlement Agreement attached to that order; (9) the employment agreement between USM and Charles D. Santomeno, effective as of April 1, 1998 ("Old Santomeno Employment Agreement"); and (10) the new employment between the Reorganized Debtor and Mr. Santomeno to take effect on the Effective Date of the Plan ("New Santomeno Employment Agreement").

The Court also received and considered the testimony of the following witnesses offered by the plan proponents in support of confirmation of the Plan: Anthony R. Calascibetta, the Chapter 11 Trustee; Paulette Kaminski, Director of Legal Affairs of the Debtor; and John J. Preefer, counsel to the ACC. Their testimony was proffered to the Court at the Confirmation Hearing with the witnesses present in open court. No party sought to cross-examine any of the witnesses.

The Court also reviewed and considered the limited objection of MFS to the Plan (Dkt. No. 3216) ("MFS Objection"), the pertinent provisions of the Plan, and the arguments of counsel for the plan proponents and MFS with respect to the MFS Objection. No other objections to confirmation were filed.

The Court considered various facts of which it was requested to take judicial notice by the plan proponents, as indicated on the record of the Confirmation Hearing, and the other oral presentations and statements presented in support of confirmation of the Plan. The Court further considered the Notice of Identification of Proposed Post-Effective Date Officers and Directors of United States Mineral Products Company and of Trustees and Members of Trust Advisory Committees of the PI Asbestos Trust and the PD Asbestos Trust, filed by the plan proponents on November 11, 2005 (Dkt. No. 3232).

After due deliberation, and sufficient cause appearing, and the Court finding that the evidence admitted at the Confirmation Hearing is persuasive and credible; the Court makes the following findings of fact and conclusions of law with respect to confirmation of the Plan ("Findings and Conclusions"). These Findings and Conclusions constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, made applicable by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). Any finding of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

## PRELIMINARY FINDINGS AND CONCLUSIONS

### Jurisdiction; Venue; Eligibility for Relief

1.    Subject Matter Jurisdiction.    The Court has jurisdiction to conduct the Confirmation Hearing and to consider confirmation of the Plan pursuant to 28 U.S.C. §§ 157 and 1334.

2.    Core Proceeding.  This matter is a core proceeding pursuant to 28 U.S.C. §

157(b), and this Court has jurisdiction to enter a final order with respect thereto, except to the

extent of the requirements of Section 524(g) of the Bankruptcy Code for issuance or affirmance

of the Permanent Channeling Injunction by the United States District Court for the District of

Delaware ("District Court").    With respect to the issuance of the Permanent Channeling

Injunction, this Court may hear and report to the District Court pursuant to 28 U.S.C. § 157(c), to

the extent necessary, concerning the entry of that relief.

3.    Venue.  At all relevant times, USM was and is a corporation organized and

existing under the laws of the State of Delaware, and maintained and continues to maintain its

principal place of business in Stanhope, New Jersey.  At all relevant times, venue in the District

of Delaware was proper pursuant to 28 U.S.C. § 1408 and continues to be proper.

**Eligibility of the Debtor for Relief Under the Bankruptcy Code.**

4.    The Debtor was and is qualified to be a debtor under Section 109(a) of the

Bankruptcy Code.

**Review of Record; Judicial Notice**

5.    Pursuant to Rule 201 of the Federal Rules of Evidence, this Court takes judicial

notice of the matters for which such notice was requested by the plan proponents at the

Confirmation Hearing.  The Court also takes judicial notice of the docket of the Debtor's Chapter

11 Case maintained by the Clerk of the Court and/or its duly appointed agent, and all pleadings

and other documents filed, all orders entered, and all evidence and arguments made, proffered or

adduced at the hearings held before the Court during the pendency of the Chapter 11 Case.

**Technical Modifications to the Plan**

6.    The Technical Modifications (Hearing Exh. 2) consist of the following:

- Amendment of Section 1.1.55 of the Plan (definition of "Excess Cash"), to clarify that only the PI Asbestos Trust will hold consent rights with respect to changes in the right to receive Excess Cash from the Reorganized Debtor.

- In response to the MFS Objection, modification of the discharge, releases, injunctions and exculpations under Sections 16.1, 16.2 and 16.5 of the Plan, to make those protections subject to the law applicable as of the Effective Date to cases under the Bankruptcy Code in the District of Delaware.

- Amendment of the Asbestos Property Damages Claims Resolution Procedures under the Plan, to implement technical changes clarifying certain provisions relating to administration of the PD Asbestos Trust and distribution of consideration to beneficiaries of the trust.

7.      The Technical Modifications constitute only technical changes, and do not materially alter or adversely affect the treatment of any Claim against or Equity Interest in the Debtor.  Accordingly, pursuant to Section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, the Technical Modifications do not require additional disclosure under Section 1125 of the Bankruptcy Code or the re-solicitation of acceptances or rejections under Section 1126 of the Bankruptcy Code, nor do they require that holders of any affected Claims against or Equity Interests in the Debtor be afforded the opportunity to change any previously cast ballot accepting or rejecting the Fifth Amended Plan as it was originally filed with the Bankruptcy Court and distributed to parties in interest for solicitation of acceptances.

8.      Accordingly, the Fifth Amended Plan, as modified by the Technical Modifications, is properly before this Court.  All votes cast with respect to the Fifth Amended Plan prior to the filing of the Technical Modifications shall be binding and shall be deemed to have been cast with respect to the Fifth Amended Plan as modified by the Technical Modifications.

## FINDINGS OF FACT

### Procedural Background

9.      USM filed a voluntary petition for relief under the Bankruptcy Code on July 23, 2001 (the "Petition Date") (Dkt. No. 1).

10.     By a notice of appointment filed with the Court on August 8, 2001 (Dkt. No. 80), the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors in the Chapter 11 Case pursuant to Section 1102(a)(1) of the Bankruptcy Code (the "Trade Committee"). By a separate notice filed on the same day (Dkt. No. 81), the U.S. Trustee appointed the ACC. Both committees actively participated and continue to participate in this case.

11.     By order dated October 28, 2002 (Newsome, B.J.) (Dkt. No. 786), the Bankruptcy Court appointed Professor Walter J. Taggart as the legal representative for future asbestos claimants pursuant to Section 524(g) of the Bankruptcy Code (the "Legal Representative").

12.     By order dated September 9, 2003 (Newsome, B.J.) (Dkt. No. 1357) ("Trustee Order"), the Bankruptcy Court ordered the U.S. Trustee to appoint a Chapter 11 Trustee in this case. By notice dated September 16, 2003, as amended September 22, 2003, the U.S. Trustee appointed Anthony R. Calascibetta, CPA, CTP as the Chapter 11 Trustee for the Debtor (Dkt. Nos. 1370, 1382). The Chapter 11 Trustee's bond was filed on September 25, 2003 (Dkt. No. 1396). The Bankruptcy Court (Newsome, B.J.) entered a further order approving Mr. Calascibetta's appointment on October 2, 2003 (Dkt. No. 1412). Two appeals from the Trustee Order were subsequently overruled by the District Court and the United States Court of Appeals for the Third Circuit.

**Historical Asbestos Liabilities of USM**

13.     USM is, and for many decades has been, engaged in the manufacture and sale of spray-applied fire retardant materials for commercial and industrial uses.  The products include wet-mix and dry-mix products.  At various times, the Debtor's product lines also included other building materials such as acoustical ceiling products, roofing membranes and roofing systems.

14.     Prior to 1973, the Debtor (directly and through subsidiaries or affiliates that were since merged into or consolidated with USM) manufactured and sold various products that contained asbestos.

15.     USM was first named as a defendant in asbestos lawsuits in 1973.  The number of asbestos-related lawsuits filed against the company grew on an annual basis over the succeeding years.

16.     As of March 26, 2001, USM had been named as a defendant in a cumulative total of more than 223,000 asbestos personal injury lawsuits and more than 285 asbestos property damage lawsuits that were filed against the company since 1973.  As a result of the company's asbestos liabilities, USM's asbestos insurance carriers paid out more than $270 million dollars in indemnity payments and defense costs prior to the Petition Date.

17.     In mid-2001, as a consequence of a significant increase in the number of new asbestos claims filed against the company, the increased cumulative and per-claim costs of indemnity and defense of such claims, and the depletion of its primary insurance coverage, USM determined to seek protection under Chapter 11 of the Bankruptcy Code to reorganize its affairs and resolve its asbestos-related liabilities.

18.    As of the Petition Date, more than 165,000 lawsuits asserting asbestos personal injury claims and 16 lawsuits asserting asbestos property damage claims were pending against the Debtor.

19.    According to a report dated October 15, 2001 by the Debtor's actuarial consultants Tillinghast/Towers Perrin ("Tillinghast"), the Debtor's potential gross undiscounted contingent liabilities on the *pending* asbestos personal injury actions alone ranged from $333.7 million to $515.4 million (see Disclosure Statement, Hearing Exh. 1, at App. E). Tillinghast further estimated that the Debtor's potential gross undiscounted contingent asbestos liabilities as of May 31, 2001, including *pending and future* claims, but excluding outside defense costs for third party asbestos-related claims, ranged from $1.7 billion to $3.2 billion on an undiscounted basis. See id.

20.    Several thousand proofs of claim were filed against the Debtor on account of asbestos-related personal injury claims, and more than 400 proofs of claim were filed on account of asbestos property damage claims. Proofs of claim were also filed for general unsecured claims (including trade claims, non-asbestos litigation claims, and one claim for damages by reason of rejection of the Debtor's employment agreement with its former chief executive officer, James P. Verhalen, Sr.).

**Propriety of Plan Proponents**

21.    The Chapter 11 Trustee and the ACC are proper proponents of the Plan under Section 1121(a) of the Bankruptcy Code.

**Negotiation and Filing of the Plan**

22.      As explained in the Disclosure Statement, prior to the appointment of the Chapter 11 Trustee, the Debtor was unable to negotiate a consensual plan with the various creditor constituencies.

23.      Following his appointment, the Chapter 11 Trustee entered into negotiations with the ACC, the Trade Committee, the Legal Representative, and the debtor's principal shareholder James P. Verhalen LLC,  in an attempt to arrive at a framework for a consensual plan.  The negotiations were lengthy, complicated and intense, and ultimately extended over nearly 18 months.  During that time period, the Chapter 11 Trustee and, subsequently, the Chapter 11 Trustee and the ACC jointly, filed several versions of a proposed plan and disclosure statement, but were unable to proceed to the plan solicitation process because of the pendency of negotiations on various unresolved issues.  Finally, in June 2005, representatives of all official creditor constituencies and the Chapter 11 Trustee reached agreement on the material terms of a plan of reorganization.  As a result of that process, the plan proponents filed their fourth amended joint plan and a related disclosure statement on June 23, 2005 (Dkt. Nos. 2892 & 2893), and proceeded to seek approval of the Bankruptcy Court to solicit acceptances.  The fourth amended plan was revised during the ensuing process leading to the approval of the Disclosure Statement, which resulted in the plan proponents' filing of the fifth Amended Plan (see Paragraph 27 below).

24.      The Plan and its exhibits are the result of arms-length negotiations conducted in good faith among the Chapter 11 Trustee, ACC, the Legal Representative, the Trade Committee, the Debtor's principal shareholder, and personal representatives of certain asbestos claimants, including the respective professionals for each of the foregoing.

10

25.    The Plan is supported by the Trade Committee and the Legal Representative.

**Overview of the Plan**

26.    The essential elements of the reorganization contemplated by the Plan include,

among other things:

- the formation of two trusts (the "Asbestos Trusts"), one for the benefit of Asbestos PI Claims (the "PI Asbestos Trust"), and one for the benefit of Asbestos PD Claims (the "PD Asbestos Trust"), each having the status of a qualified settlement fund under the Internal Revenue Code, which will assume all liabilities and obligations of USM in respect of all past, present and future Asbestos-Related Claims as provided in the Plan, and which will provide for the equitable distribution of the trust assets in partial payment of all such Asbestos-Related Claims;

- the funding of the Asbestos Trusts with the Asbestos Trust Contribution specified under Section 1.1.18 of the Plan, which consists of all of the New Common Stock of the Reorganized Debtor, the contents of an existing segregated fund which contains approximately $22 million in proceeds of a prior settlement of the Debtor's asbestos insurance coverage ("QSF Fund"), a portion of the proceeds from certain causes of action held by the Debtor's estate, certain tax refunds or savings generated or resulting from the Reorganization Tax Attributes (as defined in the Plan), Excess Cash of the Reorganized Debtor (as defined in the Plan), and certain other consideration specified in the Plan, all as allocated between the Asbestos Trusts pursuant to the Plan;

- the issuance of the Permanent Channeling Injunction pursuant to Sections 524(g) with respect to Asbestos Related Claims and Demands;

- the discharge of all Claims against the Debtor (but not including Demands, which are permanently enjoined and channeled to the Asbestos Trusts pursuant to the Permanent Channeling Injunction) and Interests in the Debtor, and the issuance of injunctions and releases in furtherance of the Plan pursuant to Sections 1141 and 105(a) of the Bankruptcy Code;

- cancellation of all Old Common Stock in the Debtor, and issuance of all New Common Stock of the Reorganized Debtor, which in turn will comprise the Asbestos Trust Equity Distribution under the Asbestos Trust Contribution;

- full payment of allowed Administrative Expense Claims, Post-Petition Financing Claims, Priority Claims, Tax Claims and Secured Claims on or as soon as practicable after the Effective Date;

- the payment of allowed General Unsecured Claims under either of two options to be elected by each holder of such Claims, as provided in the Plan; and

- treatment of allowed Non-Asbestos-Related Products Liability and Other Non-Insider Litigation Claims ("Litigation Claims") as provided in the Plan.

**The Plan Solicitation Process, and the Sufficiency of Notice**

27.    Disclosure Statement Order.  By order dated September 20, 2005 (Dkt. No. 3101) ("Disclosure Statement Order"), the Court (Fitzgerald, B.J.) approved the Disclosure Statement, approved various solicitation and notice procedures, and authorized the plan proponents to solicit acceptances of the revised plan denominated as the Fifth Amended Plan.

28.    Solicitation.  Commencing on or about September 29, 2005, BSI served the requisite materials as specified and as directed by the Disclosure Statement Order ("Solicitation Materials"), by first class mail, postage prepaid to the respective creditors, equity holders and/or their legal representatives or counsel who were entitled to receive such materials.  See Hearing Exh. 4.

29.    Publication.  In addition, the plan proponents caused the Confirmation Hearing Notice to be published in *USA Today (Domestic Edition)* on Monday, October 3, 2005, and in the October 2005 issue of *Mealey's Litigation Report: Asbestos Bankruptcy* (Vol. 5, Issue 3). See Hearing Exhs. 5-6.

30.    Sufficiency of Service and Notice.  The Solicitation Materials were timely distributed by BSI in accordance with the Disclosure Statement Order.  Good and sufficient notice of the Confirmation Hearing was given to all parties in interest.

**Balloting Results for the Plan**

31.    Unimpaired Class Deemed to Accept the Plan.  Class 1 under the Plan is unimpaired.  Class 1, therefore, is deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code without voting.

32.    <u>Impaired Class Deemed to Reject the Plan</u>.  Class 8 under the Plan is fully impaired, and will neither receive any distribution nor retain any property under the Plan on account of the holders' equity interests.  Class 8, therefore, is deemed to have rejected the Plan without voting.

33.    <u>Impaired Classes Entitled to Vote on the Plan</u>.  Classes 2, 3, 4, 5, 6, and 7 under the Plan are impaired, and therefore were entitled to vote on the Plan.

34.    <u>Voting Deadline</u>.  The Balloting Agent received ballots on the Plan from October 4, 2005 until 4:00 p.m. (Eastern Time) on October 28, 2005 (the "Voting Deadline").  All ballots that were received by the Balloting Agent before the Voting Deadline were considered to be timely cast.

35.    <u>Late Ballots Not Counted</u>.  As prescribed by the Disclosure Statement Order, ballots received by the Balloting Agent after the Voting Deadline were not counted for any purpose.

36.    <u>Results of Voting</u>.  The results of the voting are set forth in the Ballot Report (Hearing Exh. 3).

37.    <u>Acceptance by Certain Impaired Classes</u>.  For purposes of Sections 1126(c), and 1129(a) of the Bankruptcy Code, sufficient votes were timely received for the Plan to be accepted by holders of not less than two-thirds (2/3) in dollar amount and one-half (1/2) in number of each of Classes 3, 4, 5, and 7.

38.    <u>Acceptance for Purposes of Section 524(g) of the Bankruptcy Code</u>.  In addition, for purposes of Section 524(g)(2)(b)(IV)(bb) of the Bankruptcy Code, more than seventy-five percent (75%) in both number and amount of Asbestos-Related Claims in each of Classes 4 and 5 cast ballots in favor of the Plan.

**Entitlement of the Debtor to a Discharge**
**Under Section 1141(d) of the Bankruptcy Code**

39.    Confirmation of the Plan will not result in the liquidation of all or substantially all of the property of the Debtor's estate, nor will the Debtor's business cease after consummation of the Plan.    Instead, the Reorganized Debtor will engage in business operations following the Effective Date of the Plan.

**The Plan is Feasible**

40.    The plan proponents submitted projections of the Reorganized Debtor's cash flow and profitability for the first two years after the Effective Date (see Disclosure Statement, Hearing Exh. 1, at App. C).    In addition, the Chapter 11 Trustee has arranged for the Exit Loan Facility with LaSalle Business Credit LLC (subject to separate approval by this Court) for the Reorganized Debtor, which will provide the reorganized company with sufficient availability and liquidity to engage in business and to perform the obligations and requirements of the Plan.[3]

41.    Since the filing of the Plan, there have been no material adverse changes to the business of the Debtor that would suggest that the Reorganized Debtor will not be able to satisfy its obligations under the Plan.[4]

---

[3]    The Exit Loan Facility will be subject to certain liens and security interests granted to the Exit Lender. However, the following property of the Reorganized Debtor will be excluded from those liens and security interests: (i) USM Litigations (as defined in the Plan) and the proceeds thereof, (ii) the property or rights (including any income, profits or proceeds derived therefrom) contributed or to be contributed by the Debtor to the Asbestos Trust (as defined in the Plan) pursuant to clauses (b), (c), (e), (f), (g), (but only to the extent (1) of claims by the Debtor for indemnity or contribution against the estate of any other debtor under the Bankruptcy Code relating solely to asbestos liabilities of the Debtor, and (2) rights to receive tax refunds for taxable years prior to the Effective Date) (h), (i), (j) and (k) of Section 1.1.18 of the Plan, or (iii) the Trade Claims Escrow Fund.

[4]    The Borough of Stanhope, New Jersey, recently announced its intention to commence efforts to establish a "redevelopment district" that would include a portion of the Debtor's New Jersey real property.    The plan proponents, however, do not believe that these efforts will have a material adverse effect on the Reorganized Debtor's fulfillment of the Plan.

42.    The Reorganized Debtor will not be likely to require financial rehabilitation or liquidation within a reasonable time following consummation of the Plan.

43.    The proponents believe that all conditions to the occurrence of the Effective Date will be satisfied or duly waived in accordance with Section 11.1 of the Plan.

**Best Interests of USM's Current Creditors**

44.    The plan proponents submitted a liquidation analysis comparing the likely recoveries by creditors under the Plan against the recoveries under a Chapter 7 liquidation of the Debtor's estate (see Disclosure Statement, Hearing Exh. 1, at App. B).

45.    The treatment specified by the Plan for holders of Allowed Claims against the Debtor is better than would be realized in the event of a liquidation of the Debtor's estate under Chapter 7 of the Bankruptcy Code.  The anticipated recoveries by impaired creditors under the Debtor's Plan are in excess of what those same claimants could expect to receive in a Chapter 7 liquidation of the Debtor.  Accordingly, the Plan provides the Debtor's impaired creditors with more value than they would receive in a chapter 7.  This satisfies the requirements of the "best interests test" in Section 1129(a)(7) of the Bankruptcy Code.

46.    Accordingly, confirmation of the Plan is in the best interests of all of the Debtor's creditors.

**Best Interests of the Debtor's
Current and Future Asbestos Claimants**

47.    During the Chapter 11 case, by order dated March 22, 2002 (Dkt. No. 431), the Bankruptcy Court (Newsome, B.J.) approved a settlement of the Debtor's asbestos-related insurance and authorized the establishment of the QSF Fund to hold the settlement proceeds. The QSF Fund, which will constitute part of the Asbestos Trust Contribution to the Asbestos Trusts under the Plan, currently holds approximately $22 million.

48.    In a chapter 7 liquidation of USM, current and future asbestos claimants likely would not realize any recovery except to the extent of their entitlement, if any, to share in the proceeds of the QSF Fund.  By contrast, under the Plan, current and future asbestos claimants will receive the benefit of the additional components of the Asbestos Trust Contribution as allocated between the Asbestos Trusts pursuant to the Plan.

49.    In light of the available alternatives, the holders of such asbestos related claims will fare better under the Plan than they would in a Chapter 7 liquidation.

**Post-Consummation Directors and Officers of the Reorganized Debtor**

50.    Pursuant to Section 9.3 of the Plan, on the Effective Date, the following individuals will be the initial Board of Directors of the Reorganized Debtor: Messrs. Sylvester F. Miniter III, Charles D. Santomeno, and Giovanni C. Pacheco.  Messrs. Miniter and Santomeno were designated as directors in the Plan.  In accordance with the Plan, Mr. Pacheco was designated by the ACC prior to the Confirmation Hearing.

51.    Pursuant to Sections 9.3 and 9.5 of the Plan, on the Effective Date, Mr. Sylvester Miniter III will be the chairman and chief executive officer of the Reorganized Debtor.

52.    Pursuant to Sections 9.3 and 9.5 of the Plan, on the Effective Date, Mr. Charles D. Santomeno will be the president and chief operating officer of the Reorganized Debtor.

53.    The terms and conditions of the employment of Messrs. Miniter and Santomeno as officers of the Reorganized Debtor were described in the Disclosure Statement.

**Compliance with Section 524(g) of the Bankruptcy Code**

54.    The Permanent Channeling Injunction is to be implemented in connection with the Asbestos Trusts to be created under the Plan.

55.    At the time of the order for relief in the Chapter 11 Case, the Debtor had been named as a defendant in numerous personal injury, wrongful death, and property damage actions

seeking recovery for damages allegedly cause by the presence of, or exposure to, asbestos and asbestos-containing products.

56.    The PI Asbestos Trust will assume, as of the Effective Date, the liabilities of the Debtor with respect to Asbestos PI Claims.  The PD Asbestos Trust will assume, as of the Effective Date, the liability of the Debtor with respect to the Asbestos PD Claims.

57.    The Asbestos Trusts will be funded with the "Asbestos Trust Contribution" specified in Section 1.1.18 of the Plan, allocated between the Asbestos Trusts pursuant to the Plan.  On the Effective Date, the property and rights comprising the Asbestos Trust Contribution specified in Section 1.1.18 of the Plan will be contributed by the Debtor and the Reorganized Debtor to the Asbestos Trusts, as further provided in and allocated under the Plan.  In particular, and among other specified consideration therein:

(a)    All of the outstanding common stock of the Debtor will be canceled on the Effective Date, and all of the common stock of the Reorganized Debtor will be issued of record to the PI Asbestos Trust on the Effective Date of the Plan.

(b)    The Asbestos Trusts will receive the proceeds of the existing QSF Fund established during the pendency of the Chapter 11 Case pursuant to an order of this Court (Newsome, B.J.), dated March 22, 2002 (Dkt. No. 431), in the approximate current amount of $22,000,000 (inclusive of accrued and earned interest and investment income), allocated between the Asbestos Trusts pursuant to the Plan.

(c)    The Asbestos Trusts will be entitled to receive additional consideration from the Reorganized Debtor after the Effective Date, allocated between the trusts pursuant to the Plan, including, among other things: (i) any Excess Cash of the Reorganized Debtor (as defined in Section 1.1.55 of the Plan) which shall be paid by the Reorganized Debtor not less frequently than once each year for so long as the PI Asbestos Trust owns of record any New Common Stock of the Reorganized Debtor; (ii) certain Rights to Payment (as defined in Section 1.1.98 of the Plan); (iii) the net proceeds of recoveries, if any, as and when realized by the Reorganized Debtor from the USM Litigations (as provided in Section 12.12 of the Plan); (iv) the Tax Refunds, if any; and the Tax Benefit Payments, if any, as defined in Sections 1.1.102d and 1.1.103a of the Plan; and (v) the residue remaining in any financial assurance fund established on or about

17

the Effective Date for environmental remediation relating to the Debtor's property in Stanhope, New Jersey, after completion of the remediation program, up to the aggregate amount of the net proceeds of the USM Litigations deposited into such account pursuant to Section 13.14 of the Plan.

58.    Each Asbestos Trust will use its assets or income to pay for operating expenses and to pay the relevant Asbestos-Related Claims channeled to the respective trust.

59.    The Debtor is likely to be subject to substantial future Demands (as such term is used in Section 524(g) of the Bankruptcy Code) for payment arising out of the same or similar conduct or events that gave rise to the asbestos-related claims that are addressed by the Permanent Channeling Injunction.

60.    The actual amounts, numbers and timing of such Demands cannot be determined.

61.    Pursuit of such Demands outside the scope and procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Asbestos-Related Claims and Demands.

62.    The terms of the Permanent Channeling Injunction, including any provisions barring actions against the Protected Parties, pursuant to Section 524(g)(4)(A) of the Bankruptcy Code, are set forth in Sections 1.1.78 and 16.3 of the Plan, and in Section X.M.4 of the Disclosure Statement.

63.    The Plan establishes, in Class 4, a separate class of Asbestos PI Claims to be addressed by the PI Asbestos Trust and, in Class 5, a separate class of Asbestos PD Claims to be addressed by the PD Asbestos Trust.

64.    The holders of claims in Class 4 voted as a class in favor of the Plan by at least seventy-five percent (75%) of those claimants who voted. The holders of claims in Class 5 voted as a class in favor of the Plan by at least seventy-five percent (75%) of those claimants who voted.

65.    Pursuant to the Plan and the Confirmation Order, and as further set forth in the Asbestos Trust Documents for each of the trusts, each Asbestos Trust will operate through mechanisms such as structured, periodic, or supplemental payments, *pro rata* distributions, matrices, or periodic review of estimates of the numbers and values of present asbestos-related claims, or other comparable mechanisms, that provide reasonable assurance that the Asbestos Trusts will value, and be in a financial position to pay, Asbestos-Related Claims that involve similar claims in substantially the same manner.

66.    The Legal Representative was duly appointed pursuant to Section 524(g) of the Bankruptcy Code as part of the proceedings leading to issuance of the Permanent Channeling Injunction, for the purpose of protecting the rights of the entities that hold or that might subsequently assert Demands (as such term is used in Section 524(g) of the Bankruptcy Code).

67.    The Debtor's and Reorganized Debtor's contributions to the Asbestos Trusts ensure that there will be a sufficient and reliable pool of assets to pay present and future claims asserted against Asbestos Trusts in accordance with the terms of the respective Asbestos Trust Claims Resolution and Distribution Procedures for each Asbestos Trust.

68.    The inclusion of the Protected Parties and the Released Parties in the protections afforded by the Permanent Channeling Injunction is fair and equitable with respect to persons who might subsequently assert Asbestos-Related Claims against any such Protected Party or Released Party, in light of the benefits provided and to be provided by the Asbestos Trusts.

**Appointment of the Trustees and the Trust**
**Advisory Committee of the PI Asbestos Trust**

69.    Pursuant to Section 8.4.1 of the Plan, on the Effective Date the following individuals will be the Trustees of the PI Asbestos Trust: Richard Lippe, Esq., Mr. Archie Dykes, and Michael Temin, Esq.. Messrs. Lippe and Dykes were designated by those members of the

ACC having responsibility for such designations pursuant to the Plan. Mr. Temin was designated by the Legal Representative as permitted by the Plan. All of the designations were announced at the Confirmation Hearing. The Legal Representative waived his right to object to the designations made by the ACC.

70.    Pursuant to Section 8.9 of the Plan, on the Effective Date the following individuals will be the members of the Trust Advisory Committee for the PI Asbestos Trust: Thomas Wilson, Esq.; Lisa Nathanson Busch, Esq.; and Deirdre Woulfe Pacheco, Esq.. In accordance with the Plan, these persons were designated prior to the Confirmation Hearing by those members of the ACC having responsibility for such designations pursuant to the Plan.

**Appointment of the Trustee and the Trust**
**Advisory Committee for PD Asbestos Trust**

71.    Pursuant to Section 8.4.1 of the Plan, on the Effective Date, the following individual will be the Trustee of the PD Asbestos Trust: Mr. W.D. Hilton, Jr. In accordance with the Plan, Mr. Hilton was designated prior to the Confirmation Hearing by those members of the ACC having responsibility for such designation pursuant to the Plan.

72.    Pursuant to Section 8.9 of the Plan, on the Effective Date, the following individuals will be the members of the Trust Advisory Committee for the PD Asbestos Trust: Martin W. Dies, Esq., and Daniel Speights, Esq. In accordance with the Plan, these persons were designated prior to the Confirmation Hearing by those members of the ACC having responsibility for such designations pursuant to the Plan.

**Appointment of the Post-Consummation Legal**
**Representative of Future Asbestos Claimants**

73.    Pursuant to Section 8.10 of the Plan, on the Effective Date, Professor Walter J. Taggart will be the post-consummation Legal Representative of Future Asbestos Claimants.

**Cram-Down**

74.     No ballots were cast either in favor of or against the Plan by holders of claims in

Classes 2 (Secured Claims) and 6 (Litigation Claims).  In addition, Class 8 (Equity Interests) is

deemed to have rejected the Plan because the holders of interests therein will neither receive nor

retain any property under the Plan on account of their equity interests.  Accordingly, the Plan

must satisfy Section 1129(b) of the Bankruptcy Code to be confirmed.

### Treatment of Impaired Class of Secured Claims (Class 2)

75.     Class 2 under the Plan consists of allowed Secured Claims.

76.     The Plan classifies each Secured Claim in a separate class (Plan § 5.1.2).  The

Plan provides, in pertinent part, that, unless the holder agrees to less favorable treatment, the

holder of an allowed secured claim shall retain its lien without alteration or impairment, receive

the full value of its claim in cash on the Effective Date, or release to the holder the collateral

securing the claim (Plan § 7.2).

77.     The sole claim that would fall in Class 2, if it exists and is allowed against the

estate, is the alleged secured claim of MFS  The MFS claim is predicated on a mortgage on

property located at 83 Main Street, Netcong, New Jersey, given by the Debtor to MFS in 1994,

in the principal amount of $1,000,000 ("MFS Lien").  The mortgage was given to secure

obligations of the Debtor under a 1994 supply contract between the MFS and the Debtor.

78.     A dispute exists between the Chapter 11 Trustee and MFS with respect to extent,

validity and amount of the MFS claim.  The Chapter 11 Trustee and the Debtor assert that any

obligations of the Debtor to MFS with respect to the supply contract were fully performed and

satisfied as of late 2004.  Based on that contention, among others, the Chapter 11 Trustee filed an

objection to MFS's alleged secured claim in March 18, 2005 (Dkt. No. 2580).  MFS, however,

asserts that it remains entitled to payment of certain sums relating to that contract. MFS opposed the Chapter 11 Trustee's request for relief, and filed a written opposition to the Chapter 11 Trustee's request for relief (Dkt. No. 2844), including documentary evidence from which MFS contends that the Debtor remains obligated to MFS in the amount of $50,410.05.

79.     Pursuant to the MFS Stipulation (Hearing Exh. 7), the Chapter 11 Trustee, the ACC and MFS agree that, subject to adjudication by this Court of the dispute between the parties, the alleged secured claim of MFS is not more than $70,000, and that the lien securing such claim shall be deemed reduced to $70,000. The stipulation further provides that, upon entry of the Confirmation Order, the Chapter 11 Trustee will promptly establish and fund a separate cash account in the amount of $70,000 ("MFS Escrow") to which the MFS Lien and the underlying claim will automatically attach upon creation and funding of the account. Upon the funding of the MFS Escrow, the MFS Lien will be deemed satisfied and discharged of record only against the Debtor's real estate. In addition to executing a release of the MFS Lien substantially in the form attached to the MFS Stipulation, MFS will execute such other and further documentation that may be required by the Chapter 11 Trustee to evidence the discharge of the MFS Lien against the real estate.

80.     The Exit Lender, LaSalle Business Credit LLC ("LaSalle") acknowledged on the record of the Confirmation Hearing that its lien on the proceeds of the MFS Escrow will be subordinate to the MFS Lien attached to that account.

### Treatment of Impaired Class of Litigation Claims (Class 6)

81.     Class 6 under the Plan consists of Litigation Claims. Class 6 is an impaired class of unsecured claims. All of the claims in Class 6 are disputed and unliquidated. Each Class 6 claim is also subject to insurance coverage held by the Debtor that covers the underlying risks.

22

82.    Section 7.6 of the Plan provides for the Litigation Claims to be liquidated in post-consummation proceedings before the pertinent non-bankruptcy courts or tribunals.  If upheld by final orders, judgments or settlements in such proceedings, the Litigation Claims in Class 6 are entitled to payment from the proceeds of insurance held by the Debtor that covers the underlying risks.

83.    No class of claims or interests that is junior to Class 6 will receive or retain any property under the Plan on account of its claims or interests, as the case may be.

### Treatment of Impaired Class of Equity Interests (Class 8)

84.    Class 8 under the Plan consists of allowed Equity Interests.

85.    There is no class of interests or claims junior to Class 8.  Under the Plan, holders of interests in Class 8 do not receive or retain any property on account of their stockholdings in the Debtor.

### Discharge, Releases, Injunctions and Exculpations Under the Plan

86.    Article XVI of the Plan contains and implements, in addition to the Permanent Channeling Injunction implemented thereunder: (i) a discharge and a discharge injunction under Sections 16.1.1(a) and (c) of the Plan; (ii) releases under Section 16.1.1(b) of the Plan; (iii) a general injunction under Section 16.2 of the Plan; and (iv) an exculpation of various persons under Section 16.5 of the Plan.  Pursuant to the Technical Modifications, these provisions are expressly made subject to the law applicable as of the Effective Date to cases under the Bankruptcy Code in the District of Delaware.

87.    All of the injunctions, releases, discharges and exculpations were bargained for, at arm's length, by the plan proponents and other interested parties, and represent central elements

of the overall agreements and compromises reached among representatives of the estate and the affected constituencies.

88.    The releases and exculpations under Sections 16.1.1(b) and 16.5 of the Plan exclude from their protections any claims or causes of action arising from gross negligence, fraud or willful misconduct.

89.    In addition, Sections 4.1 and 16.12 of the Plan provide for releases to be granted to, and to be given by, the Post-Petition Lender in connection with the satisfaction of the Post-Petition Financing Claim.

90.    The Plan and the Disclosure Statement describe in specific and conspicuous language, identified in bold-faced type, all acts to be enjoined and the entities subject to the injunctions under the Plan, as required by Bankruptcy Rule 3016(c).

91.    The injunctions to be granted under the Plan and under the Confirmation Order are: reasonable in scope and purpose; fair and equitable and in the best interest of the Debtor, its estate, creditors and other parties in interest; essential to fulfillment of the Plan, so as to maximize the value of the bankruptcy estate by preserving and protecting the business and value of the Reorganized Debtor operating outside of bankruptcy protection and in the ordinary course of business; and essential to the successful reorganization of the Debtor.

92.    Each beneficiary of the releases, waivers of claims, exculpations, indemnities and injunctions contained in the Plan either shares an identity of interest with the Debtor or its estate, or was instrumental to the successful prosecution and conclusion of the Chapter 11 Case, provided necessary funding to the Debtor, and/or has contributed substantial assets or other benefits to the Debtor's reorganization, which value will allow for distributions that would not otherwise be available but for the contribution made by such non-debtor parties.